**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DARRELL A. PRICE; DAVID H.
HOLLAND; ROBERT A. HOLL;
OSWALD D. HOLSHOUSER;
RAYMOND T. CARLTON; S. VANCE
ELSTROM; MARK E. CORWIN,
Plaintiffs-Appellees,

and

RONALD M. HAYES; RANDY HAGLER,
Plaintiffs,

No. 95-1263

v.

CITY OF CHARLOTTE, NORTH
CAROLINA,
Defendant-Appellant,

and

NORTH STATE LAW ENFORCEMENT
OFFICERS ASSOCIATION,
Defendant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CA-91-158-C-C-P)

Argued: April 1, 1996

Decided: September 3, 1996

Before ERVIN, NIEMEYER, and WILLIAMS, Circuit Judges.

_____

Affirmed in part and reversed in part by published opinion. Judge Williams wrote the opinion, in which Judge Ervin and Judge Niemeyer joined.

_____

**COUNSEL**

**ARGUED:** Frank Lane Williamson, WOMBLE, CARLYLE, SANDRIDGE & RICE, Charlotte, North Carolina, for Appellant. Louis L. Lesesne, Jr., LESESNE & CONNETTE, Charlotte, North Carolina, for Appellees. **ON BRIEF:** Jim D. Cooley, WOMBLE, CARLYLE, SANDRIDGE & RICE, Charlotte, North Carolina, for Appellant.

_____

**OPINION**

WILLIAMS, Circuit Judge:

Appellees, seven white police officers, sued Appellant, the City of Charlotte, North Carolina, pursuant to 42 U.S.C.A.§ 1983 (West 1994), contending that promotions practices for advancement in the Charlotte Police Department violated the Equal Protection Clause of the Fourteenth Amendment. The district court agreed, see Hayes v. City of Charlotte, 802 F. Supp. 1361 (W.D.N.C. 1992), and enjoined the City from employing any race-based criteria in reaching its employment decisions; we affirmed in part, see Hayes v. North States Law Enforcement Officers Assoc., 10 F.3d 207 (4th Cir. 1993). While we affirmed with respect to liability, we remanded the case to the district court to limit the scope of the injunction and to resolve issues stayed during the appeal. On remand, the district court enjoined the City from using unlawful racial preferences regarding promotions to sergeant within the police department, and a jury awarded each Appellee $3,000 in compensatory damages for his injury in being subjected to the unconstitutional promotions practice.[1] Accordingly,

_____

[1] None of the Appellees asserted a denial of promotion, and the City did not appeal awards of compensatory damages to plaintiffs who were denied promotions because of their race. Appellees here are police officers who would not have been promoted regardless of a racially discriminatory promotions practice.

2

the district court entered judgment in Appellees' favor, denying the City of Charlotte's motions for judgment as a matter of law, see Fed. R. Civ. P. 50.

In this appeal, we must decide the propriety of awarding compensatory damages for Appellees' emotional distress flowing from the knowledge that the City excluded them from consideration for promotion to sergeant because of their race. Contending that Appellees would not have been promoted regardless of their race, the City contends that the district court erred in ruling that Appellees have standing to sue to recover compensatory damages. Additionally, the City posits that the evidence is insufficient to support the award of compensatory damages for Appellees' emotional distress. We conclude that Appellees have standing to sue to recover compensatory damages for emotional distress, but that the evidence is insufficient to support the verdict. Accordingly, we affirm in part and reverse in part.

I.

The facts are recited in Hayes, and we need address them only briefly here. In February 1991, the City promoted twenty-one police officers from patrol officer to police sergeant. Police Chief D.R. Stone determined that four of the twenty-one promotions would be awarded exclusively to African-Americans, regardless of the ranking on the promotions roster. The first eighteen promotions were awarded based on ranking, but only one of the promoted officers was African-American. In order to meet his quota of promoting four African-Americans to police sergeant, Chief Stone disregarded qualified white applicants for the remaining three promotions and selected three African-American applicants, whose rankings on the promotions roster were twenty-nine, sixty-two, and seventy-four, respectively. All seven Appellees outranked candidates sixty-two and seventy-four, as did forty-one other white applicants. A substantial number of white officers who were not promoted had rankings superior to those of any of the Appellants. Even if an invidious factor -- the race of each candidate -- had not entered the promotions calculus, Appellees would not have been selected for promotion to sergeant.

On remand, Appellees asserted claims of emotional distress, seeking compensatory damages. The City unsuccessfully sought summary

3

judgment respecting the emotional distress claims, contending that their roster rankings did not qualify them for promotion to police sergeant, and they thus were not entitled to individual relief in the form of damages. Consequently, the issue of individual relief went to trial. At trial, Appellees sought to prove their claims of emotional distress by testifying that they experienced degradation and betrayal as a result of the City's unlawfully discriminatory promotions policy. Appellees' evidence of their emotional distress consisted exclusively of their own testimony. According to Appellees, they "had played by the rules," but the City "deceived" them by not basing its promotions on grounds of competence.

At the close of Appellees' case-in-chief, and again at the close of the evidence, the City moved unsuccessfully for judgment as a matter of law pursuant to Rule 50. A jury returned a verdict in favor of each Appellee for $3,000 compensatory damages. Following entry of judgment, the City again unsuccessfully moved for judgment as a matter of law. Thereafter, the City appealed both from the final judgment and the order denying its post-trial motion for judgment as a matter of law.

On appeal, the City advances two arguments regarding compensatory damages. First, the City asserts that it is not liable for any damages because Appellees are entitled solely to injunctive or declaratory relief. Second, the City posits that even if it is liable for compensatory damages, the evidence is insufficient to sustain the verdict. We address these arguments in turn.

II.

The City asserts first that Appellees lack standing to seek compensatory damages because they would not have been promoted to sergeant regardless of the unconstitutional racial criterion. According to the City, Appellees are not entitled to any damages because they suffered no compensable loss that can be satisfied by damages. A violation of equal protection is Appellees' sole injury, the City posits, and the remedy for such a violation is exclusively injunctive or declaratory relief. The City's position is that because there was only a "technical foul," Appellees are precluded from recovering damages.

Appellees contest this position, maintaining that the actual injury they suffered was their race-based exclusion from equal consideration for the promotion to sergeant, not the fact that they failed to obtain a promotion. According to Appellees, their injuries derive from the City's unconstitutional use of race to decide promotions in the police department, not from an ultimate denial of a promotion. Appellees' compensatory damages, therefore, are to redress the ignominy of denial of consideration for promotion solely because they are white.

Concluding that Appellees had standing to seek compensatory damages, the district court denied the City's motions for judgment as a matter of law on this basis. We review the district court's ruling de novo, see Trandes Corp. v. Guy Atkinson Co., 996 F.2d 655, 661 (4th Cir.), cert denied, 114 S. Ct. 443 (1993), and affirm.

We conclude that Supreme Court precedent forecloses the City's argument that Appellees are precluded from recovering any damages because they would not have been promoted regardless of the unlawful promotions scheme. In Carey v. Piphus, 435 U.S. 247 (1978), the Court concluded that § 1983 "was intended to `[create] a species of tort liability' in favor of persons who are deprived of `rights, privileges, or immunities secured' to them by the Constitution." Id. at 253 (alteration in original) (quoting Imbler v. Pachtman, 424 U.S. 409, 417 (1976)). Thus, damages awarded pursuant to § 1983 often find their genesis in the common law of torts, and the gravamen of tort law is "compensation for the injury caused to plaintiff by defendant's breach of duty." Id. at 255 (internal quotation marks omitted) (emphasis added in part). Thus, "damages are available under [§ 1983] for actions `found . . . to have been violative of . . . constitutional rights and to have caused compensable injury . . . .'" Id. at 255 (quoting Wood v. Strickland, 420 U.S. 308, 319 (1975)). In endorsing an award of damages, Carey explained that the courts must not lose sight of the fact that such a plaintiff suffered a constitutional violation, and the federal courts must provide a remedy for the wrong suffered. See id. at 266.

While Carey concluded that damages for emotional distress are available under § 1983, the Court held that for a plaintiff to recover more than nominal damages, his injury must have actually been

5

caused by the challenged conduct, and the injury must be sufficiently proved:

> [W]e foresee no particular difficulty in producing evidence that mental and emotional distress actually was caused by the [constitutional violation]. Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff. In sum, then, although mental and emotional distress caused by the [constitutional violation] itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused.

Id. at 263-64. Extrapolating from the common law of torts, the Carey Court thus concluded that a constitutional violation is indeed compensable with damages for emotional distress, declining to relegate an otherwise undamaged plaintiff to equitable remedies.

In expounding on the propriety of compensatory damages, the Carey Court explained that compensatory damages for emotional distress must be attributed to the actual constitutional violation, as opposed to denial of the ultimate benefit, and must be proved by a sufficient quantum of proof demonstrating that the violation caused compensable injury. Thus, the Court observed that if the plaintiff's injury is caused by "a justified deprivation, including distress, [it] is not properly compensable under § 1983." Id. at 263. The injury, therefore, must flow from the actual constitutional violation. A plaintiff's failure to prove compensatory damages results in nominal damages, typically one dollar, see id. at 266-67, the rationale for the award of nominal damages being that federal courts should provide some marginal vindication for a constitutional violation. Carey, therefore, teaches that compensatory damages for emotional distress are available for a constitutional violation, but must be attributed to the invidious discrimination, not to the deprivation of an ultimate benefit; to recover more than nominal damages, actual injury caused by the constitutional violation must be proved by sufficient evidence.

The Court reiterated the teachings of Carey in Memphis Community School District v. Stachura, 477 U.S. 299 (1986). Stachura reaf-

6

firmed the conclusion that § 1983 is akin to tort law and that determining damages pursuant to § 1983 is governed by principles of the common law of torts, with the hallmark of these principles being one of compensation for actual injury. See id. at 307. In describing the types of injury for which compensatory damages may be recovered pursuant to § 1983, the Stachura Court observed that "out-of-pocket loss and other monetary harms [and] `impairment of reputation . . . , personal humiliation, and mental anguish and suffering'" could be awarded. Id. at 306 (quoting Gertz v. Robert Welch, Inc.,, 418 U.S. 323, 350 (1974)). After explaining that damages for emotional distress can be recovered under § 1983, the Court reaffirmed Carey by stating that "`the basic purpose' of § 1983 damages is `to compensate persons for injuries that are caused by the deprivation of constitutional rights,'" id. (quoting Carey , 435 U.S. at 254), and to receive compensatory damages, a plaintiff's damages must be"grounded in determinations of plaintiffs' actual losses," id. at 307. Hence, Stachura reaffirmed the holding that the purpose of § 1983 is to compensate a plaintiff whose constitutional rights have been violated; to recover compensatory damages for such violations, a plaintiff must suffer actual, demonstrable injury.

The Court applied the principles of Carey and Stachura in Northeastern Florida General Contractors v. City of Jacksonville, Fla., 508 U.S. 656 (1993), in holding that the injury required to recover compensatory damages for a constitutional violation springs from the impermissible conduct of the Government in perpetrating invidious discrimination, not from the consequence of denial of plaintiff's ultimate goal. In Northeastern, contractors challenged a set-aside program that awarded black- and Hispanic-owned businesses construction work, regardless of whether such businesses submitted the lowest bid. See id. at 659. Asserting that the set-aside program violated the Equal Protection Clause of the Fourteenth Amendment, the contractors sued, seeking declaratory and injunctive relief. See id. Rather than address the merits of the contractors' suit, the Eleventh Circuit concluded that they lacked standing to challenge the set-aside program because they failed to demonstrate that but for the set-aside program, they would have obtained the contracts through successful bidding. See id. at 660.

Reversing the Eleventh Circuit, the Supreme Court concluded that the contractors possessed standing to sue. Analogizing from Regents

7

of University of California v. Bakke, 438 U.S. 265 (1978), the Court concluded that the contractors possessed standing because the requisite injury was the inability to compete equally for contracts simply because the contractors were neither black nor Hispanic. See id. at 666-68. In Bakke, Bakke was denied admission to medical school because he was white, and the Court held that this denial constituted the requisite injury because Bakke was not "permit[ted] . . . to compete for all 100 places in the class simply because of his race." Bakke, 438 U.S. at 281 n.14. Thus, "even if Bakke had been unable to prove that he would have been admitted in the absence of the special program, it would not follow that he lacked standing." Id. at 280-81 n.14. Just as Bakke suffered injury, the Northeastern Court held the contractors suffered injury in fact because they were denied equal protection:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

Northeastern, 508 U.S. at 666. Specifically applied to set-aside programs, the "`injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." Id.

Rounding out the Carey-Stachura-Northeastern trilogy for recovering damages based on a § 1983 equal protection claim is Adarand Constructions, Inc. v. Pena, 115 S. Ct. 2097 (1995). Adarand challenged a federal set-aside program that awarded government contracts to businesses owned by minorities, regardless of whether the minority-owned business submitted the lowest bid, contending that this program violated the Equal Protection Clause. See id. at 2104. In addition to seeking declaratory and injunctive relief to prevent future discrimination, Adarand sought compensatory damages for losing a contract that went to a hispanic-owned business. The Government asserted that the program was constitutional and asserted further that

8

Adarand lacked standing to sue for future relief. See id. Holding that Adarand had suffered injury in fact with respect to both compensatory and declaratory or injunctive relief, the Supreme Court rejected the Government's contention:

> [W]e must consider whether Adarand has standing to seek forward-looking relief. Adarand's allegation that it has lost a contract in the past because of a subcontractor compensation clause of course entitles it to seek damages for the loss of that contract . . . . But as we explained [previously,] the fact of past injury "while presumably affording[the plaintiff] standing to claim damages . . ., does nothing to establish a real and immediate threat that he would again" suffer similar injury in the future.

Id. (quoting Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)) (second alteration in original). In reaching the conclusion that Adarand had standing to maintain the suit, the Court relied on Northeastern, specifically rejecting the Government's contention that"Adarand need . . . demonstrate that it has been, or will be, the low bidder on a government contract. The injury in cases of this kind is that a `discriminatory classification prevent[s] the plaintiff from competing on an equal footing.'" Id. (quoting Northeastern , 113 S. Ct. at 2304).

We applied these principles in Burt v. Abel, 585 F.2d 613 (4th Cir. 1978) (per curiam) in the context of a due process violation. Burt was terminated from her position as a teacher, but the termination was effected without affording Burt due process. Pursuant to Carey, we remanded the case to the district court to determine whether Burt could establish compensatory damages for her § 1983 claim. In remanding, we observed that in order to recover such damages, Burt must prove that her injury flowed from the denial of due process, not from termination of her teaching position, the denial of her ultimate benefit. See id. at 616. In remanding to determine the propriety of awarding compensatory damages, we explained that"to recover more than nominal damages" for emotional distress, a plaintiff "must also prove that the procedural deprivation caused some independent compensable harm." Id. at 616. Likewise, our sister circuits have applied the rationale of Carey and its progeny to sustain compensatory damages awarded pursuant to § 1983. See, e.g. , Miner v. City of Glens

9

Falls, 999 F.2d 655, 663 (2d Cir. 1993) (sustaining an award of compensatory damages based on emotional distress claim for a due process violation); United States v. Balistrieri , 981 F.2d 916, 933 (7th Cir. 1992) (rejecting the very argument that the City advances here and affirming an award of damages for emotional distress under the Fair Housing Act), cert. denied, 510 U.S. 812 (1993).

Applying these precedents, we conclude that Appellees have standing to recover compensatory damages, provided their injuries resulted from the constitutional violation and are sufficiently proved. Carey and its progeny demonstrate that the injury Appellees suffered is the ignominy and illegality of the City's erecting a racial bar to promotions, and more importantly, that this injury can be compensable by damages, not merely declaratory or injunctive relief. Similar to the plaintiffs in Bakke, Northeastern, and Adarand, Appellees were not competing on a level playing field -- the cards were unlawfully stacked against them -- and this denial of equal protection constitutes injury in fact capable of supporting compensatory damages. These precedents also hold that Appellees may be entitled to compensatory damages for emotional distress, the precise type of injuries claimed here. In accordance with these precedents, however, Appellees must establish that their injury is grounded in the denial of equal protection, not their lack of promotions. Provided, therefore, that the jury awarded Appellees damages predicated on their unconstitutional treatment, rather than the ultimate deprivation of promotion to sergeant, Appellees can recover compensatory damages for emotional distress, the issue to which we now turn.

III.

At trial, some Appellees attempted to prove their compensatory damages for emotional distress by testifying that they suffered ignominy as a result of the City's invidious discrimination and the consequences this discrimination visited on their lives. Some Appellees testified in the most generic of terms that they were "humiliated," "betrayed," and "deceived" by the City's invidiously discriminatory promotions policy. In mustering the evidence of their compensatory damages, Appellees proffered only their vague, conclusory testimony, but despite the ephemeral nature of this evidence, the jury awarded

10

each Appellee $3,000 in compensatory damages for his emotional distress.

Challenging the amount of the award of compensatory damages with respect to each Appellee, the City posits that the evidence is insufficient as a matter of law to sustain the verdict. According to the City, the evidence completely lacks any probative quality and is entirely speculative. Given these fatal flaws, the City argues that on no principled basis can the award of compensatory damages be sustained. The district court erred, therefore, the City reasons, in denying its motions for judgment as a matter of law.

Appellees advance two arguments respecting the sufficiency of the evidence. First, they maintain that we are procedurally barred from reviewing the sufficiency of the evidence because the City failed to raise and preserve adequately this issue in its Rule 50 motions. Second, even disregarding the procedural bar to reviewing the sufficiency of the evidence to sustain the compensatory damages, Appellees assert that the evidence is adequate to sustain their modest awards. According to Appellees, therefore, the district court properly denied the City's motions for judgment as a matter of law. We address these arguments in turn.

A.

Traditionally the City is required to have raised the reason for which it is entitled to judgment as a matter of law in its Rule 50(a) motion before the case is submitted to the jury and reassert that reason in its Rule 50(b) motion after trial if the Rule 50(a) motion proves unsuccessful. See Singer v. Dungan, 45 F.3d 823, 928-29 (4th Cir. 1995). Thus, a Rule 50(a) motion is a prerequisite to a Rule 50(b) motion because the City must apprise the district court of the alleged insufficiency of Appellees' suit before the case is submitted to the jury. See Tights, Inc. v. Acme-McCrary Corp., 541 F.2d 1047, 1058 (4th Cir.), cert. denied, 429 U.S. 980 (1976). Hence, if the City completely failed to question the sufficiency of the evidence supporting compensatory damages in its Rule 50 motions, absent plain error, we would "not review the sufficiency of the evidence because implicit in the [City's] failure to move for judgment as a matter of law is the belief that the evidence created a jury issue, and the [City] `should not

11

be permitted on appeal to impute error to the trial judge for sharing that view.'" Bristol Steel & Iron Works. v. Bethlehem Steel Corp., 41 F.3d 182, 187 (4th Cir. 1994) (quoting Little v. Bankers Life & Casualty Co., 426 F.2d 509, 511 (5th Cir. 1970)).

Our review of the record compels us to conclude that the City sufficiently raised and preserved the sufficiency issue for appellate review. First, in its Rule 50(a) motion at the close of Appellees' case-in-chief, the City contended "there's no legally sufficient evidentiary basis for a reasonable jury to find for the plaintiff on any of the issues brought before the court." (J.A. at 196.) Also, in arguing its Rule 50(a) motion, the City specifically reiterated that "there's really been no evidence from which a reasonable jury could conclude that they did, in fact, suffer mental and emotional distress that can be related to the constitutional violation they complained of." (J.A. at 199.) Denying the City's motion, the district court concluded that the sufficiency issue was raised: "I believe there is sufficient[evidence] -- in the light most favorable to the plaintiff to go to the jury." (J.A. at 203.) We likewise conclude that the sufficiency issue was assuredly raised, given that we have reviewed sufficiency challenges under less compelling circumstances. See Singer, 45 F.3d at 828 (reviewing an improperly raised sufficiency challenge under Rule 50 and excusing the impropriety because the district court stated that there was sufficient evidence to send the case to the jury). We find no merit, therefore, in Appellees' contrary contention; accordingly, we conclude that we may review the sufficiency of the evidence.

B.

1.

In reviewing a Rule 50 determination, our review is circumscribed with respect to any facts the jury found, but plenary with respect to any legal conclusions underlying the verdict:

> Judgment as a matter of law is proper "when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A James W. Moore, Moore's Federal Practice¶ 50.07[2], at 50-76 (2d ed. 1994). The movant is entitled to judgment as

12

> a matter of law "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." Bryan v. James E. Holmes Regional Medical Ctr., 33 F.3d 1318, 1333 (11th Cir. 1994) (internal quotation marks omitted). While our review of this motion is plenary, it is also circumscribed because we must review the evidence in the light most favorable to [the nonmoving party]. See Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994).

Singer, 45 F.3d at 826-27. Because federal courts do not directly review jury verdicts, constrained, as we are, by the Seventh Amendment, the City bears a hefty burden in establishing that the evidence is not sufficient to support the awards. See Bristol Steel & Iron Works, 41 F.3d at 186-87. In determining whether the evidence supports the awards, we review the evidence, and all reasonable inferences to be drawn therefrom, in favor of Appellees. See Malone v. Microdyne Corp., 26 F.3d 471, 475 (4th Cir. 1994). Recognizing that we may not substitute our judgment for that of the jury or make credibility determinations, see Murdaugh Volkswagen, Inc. v. First Nat'l Bank, 801 F.2d 719, 715 (4th Cir. 1986), if there is evidence on which a reasonable jury may return verdicts in favor of Appellees, we must affirm, see Wyatt v. Interstate & Ocean Transp., 623 F.2d 888, 891 (4th Cir. 1980). While we are compelled to accord the utmost respect to jury verdicts and tread gingerly in reviewing them, see Mattison v. Dallas Carrier Corp., 947 F.2d 95, 99 (4th Cir. 1991), we are not a rubber stamp convened merely to endorse the conclusions of the jury, but rather have a duty to reverse the jury verdicts if the evidence cannot support it, see Singer, 45 F.3d at 829.

2.

While Carey concluded that compensatory damages for emotional distress are compensable under § 1983, such damages may not be presumed from every constitutional violation, but must be proven by competent, sufficient evidence. See Carey, 435 U.S. at 262-63 & n.20. The emotional distress, moreover, must find its genesis in the actual violation, not in any procedural deficiencies that accompanied the violation, see id. at 263, because damages for violations of civil rights are intended to "compensate injuries caused by the [constitu-

13

tional] deprivation," id. at 265 (emphasis added). See also Stachura, 477 U.S. at 308 (holding that there is no right to damages other than nominal damages for violation of a constitutional right unless actual injury is proven). Consequently, Appellees are required "to convince the trier of fact that [they] actually suffered distress because of the [equal protection violation] itself," Carey, 435 U.S. at 263, and failure to succeed in establishing "actual injury" based on sufficient evidence will result in the award of only nominal damages, typically one dollar, id. at 266-67. In expounding on the availability of compensatory damages for emotional distress for a constitutional violation, Carey observed that such damages are "customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff," id. at 263-64, and such injury "may be evidenced by one's conduct and observed by others," id. at 264 n.20. Carey, therefore, requires evidence of emotional distress sufficient to convince the trier of fact that such distress did in fact occur and that its cause was the constitutional deprivation itself and cannot be attributable to other causes. A verdict supported by competent evidence, therefore, is a prerequisite to recover compensatory damages for a constitutional violation. This remedial scheme comports with Carey's holding that remedies for constitutional violations "should be tailored  to the interests protected by the particular right in question," Carey , 435 U.S. at 259 (emphasis added), which, of course, comports with the Carey Court's grounding its decision for analyzing constitutional violations in the common law of torts, see id. at 258-59, the body of law to which we now turn.

Traditionally, common law courts have been reticent regarding compensatory damages for emotional distress in the absence of physical injury. See W. Page Keeton et al., Prosser & Keeton on The Law of Torts Ch. 2, § 12, at 64 (5th ed. 1984). This reticence originated from "the elementary principle that mere mental pain and anxiety are too vague for legal redress," Southern Express Co. v. Byers, 240 U.S. 612, 615 (1916) (internal quotation marks omitted). Not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims, see Consolidated Rail Corp. v. Gottshall, 114 S. Ct. 2396, 2408 (1994), and the intrusion of the federal courts into proscribing societal etiquette, see Pope v. Rollins Protective Servs. Co., 703 F.2d 197, 204 (5th Cir. 1983). Empathizing with the trepidation of common law courts in analyzing such claims, the federal courts have recognized that emotional distress claims aris-

14

ing from constitutional violations are not immunized from the nebulous, speculative character that plagues their common law analogues. See, e.g., Ramsey v. American Air Filter Co. , 772 F.2d 1303, 1313 (7th Cir. 1985) (noting the paucity of evidence in reviewing damages for a § 1981 claim based on emotional distress and noting further that the proffered evidence was so general and vague that remittitur was required); Cohen v. Board of Educ., Smithtown Cent. Sch. Dist., 728 F.2d 160, 162 (2d Cir. 1984) (holding that a claim of emotional distress supported only by the plaintiff's testimony could not support an award of "substantial damages"); Dougherty v. Barry, 604 F. Supp. 1424, 1443 (D.D.C. 1985) (ruling that damages for emotional distress based on a constitutional violation could not be awarded for want of exactitude). Guided by these principles, we analyze the specific claims presented by this appeal.

Here, as we set out infra at 21-26, the only evidence of Appellees' emotional distress was their own testimony. A survey of the case law reveals that a plaintiff's testimony, standing alone, may support a claim of emotional distress precipitated by a constitutional violation. See, e.g., Biggs v. Village of Dupo, 892 F.2d 1298, 1304 (7th Cir. 1990); Rakovich v. Wade, 819 F.2d 1393, 1399 & n.6 (7th Cir.) (Rakovich I) vacated on other grounds , 850 F.2d 1179 (7th Cir. 1987) (en banc), on reh'g, 850 F.2d 1180 (7th Cir.) (Rakovich II) (en banc), cert. denied, 488 U.S. 968 (1988); Spence v. Board of Educ. of Christina Sch. Dist., 806 F.2d 1198, 1201 (3d Cir. 1986); Chalmers v. City of Los Angeles, 762 F.2d 753, 761 (9th Cir. 1985); Cohen, 728 F.2d at 162; Williams v. Trans World Airlines, Inc. , 660 F.2d 1267, 1272-73 (8th Cir. 1981); Nekolny v. Painter, 653 F.2d 1164, 1172-73 (7th Cir. 1981), cert. denied, 455 U.S. 1021 (1982); Dougherty, 604 F. Supp. at 1443; see also see also Bolden v. Southeastern Pa. Transp. Auth., 21 F.3d 29, 34-36 & n.3 (3d Cir. 1994) (generally endorsing this view, but specifically holding that medical evidence was not necessary to prevail on a claim for emotional distress); Marable v. Walker, 704 F.2d 1219, 1220 (11th Cir. 1983) (holding that plaintiff's own testimony of emotional distress was sufficient to warrant an evidentiary hearing and award of compensatory damages).

Equally, however, the case law reveals that courts scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony. See, e.g.,

15

Biggs, 892 F.2d at 1304 (remitting compensatory damages based on emotional distress claim for want of sufficient evidence); Spence, 806 F.2d at 1201 (affirming remittitur of compensatory damages because plaintiff's testimony was too speculative to support the verdict of $22,060); Cohen, 728 F.2d at 162 (holding that plaintiff was not entitled to recover "any substantial sum" based on emotional distress because proof was so lacking); Nekolny, 653 F.2d at 1172-73 (reversing a damages award for emotional distress for a First Amendment violation because the evidence was insufficient to support it); see also Hetzel v. County of Prince William, No. 95-1935, 1996 WL 386464, at *2 (4th Cir. July 11, 1996) (reversing and remanding excessive compensatory damages award in a Title VII and § 1983 suit where it was based "almost exclusively" on plaintiff's conclusory testimony); Morgan v. Secretary of Hous. & Urban Dev., 985 F.2d 1451, 1459 (10th Cir. 1993) (reversing a $5000 verdict for emotional distress brought under the Fair Housing Act because the verdict was not supported by substantial evidence). If, as in the instant appeal, "the injured part[ies] provide[ ] the sole evidence [of mental distress, they] must reasonably and sufficiently explain the circumstances of [their] injury and not resort to mere conclusory statements," Biggs, 892 F.2d at 1304 (internal quotation marks omitted) (third alteration in original), and seriatim recitations of "depression" or "hurt feelings" as evidence of emotional distress offered by the plaintiff fail to meet this standard, see Hetzel, 1996 WL 386464, at *4; Morgan, 985 F.2d at 1459; Nekolny, 653 F.2d at 1172-73. A plaintiff asserting a constitutional violation, therefore, must produce evidence of "demonstrable emotional distress," see Rakovich I, 819 F.2d at 1399, or "demonstrable mental anguish," George v. Bourgeois, 852 F. Supp. 1341, 1353 (E.D. Tex. 1994) (dicta). In addition, Appellees must demonstrate a causal connection between the constitutional violation and their demonstrable emotional distress to recover compensatory damages. See Gore v. Turner, 563 F.2d 159, 164 (5th Cir. 1977). Appellees, therefore, cannot automatically recover compensatory damages for emotional distress simply because they proved a violation of a constitutional right. Thus, while a plaintiff's testimony, standing alone, can support an award of compensatory damages, the evidence of the emotional distress must be demonstrable, genuine, and adequately explained.

Various courts have applied these precepts to reverse or remand compensatory damages awards. For instance, in Biggs, Biggs, who

16

was discharged and brought a First Amendment claim against the Village of Dupo, was told that he behaved in a manner "`unbecoming a police officer,'" and "was unworthy to represent [the defendant,] Village of Dupo," Biggs, 892 F.2d at 1305. According to Biggs, these statements caused him emotional distress, and in presenting the evidence of his emotional distress, he "testified that he was affected emotionally by being fired, and that he was concerned over `the idea of my family going through it.'" Id. at 1304 (quoting testimony). Except for his own conclusory testimony, Biggs "made no offer of proof, and no other direct testimony concerning mental distress was introduced." Id. The Seventh Circuit vacated and remanded Biggs's compensatory damages award of $60,000 unless Biggs accepted a remittitur of $29,970 so that he recovered only his lost wages. See id. at 1305. According to the court, Biggs had failed "reasonably and sufficiently [to] explain the circumstances of his injury," and therefore his conclusory, inadequate testimony could not support compensatory damages for emotional distress. Id. at 1304 (internal quotation marks omitted). Because Biggs's testimony did not show "demonstrable emotional distress," id. at 1305 (internal quotation marks omitted), but at most consisted of "mere conclusory statements," id. at 1304 (internal quotation marks omitted), the court held that Biggs's evidence of his emotional distress was insufficient to support the verdict. See id. at 1305.

In Ramsey, the Seventh Circuit again addressed the issue of demonstrable evidence of injury in the context of an excessive compensatory damages award. A jury awarded Ramsey $75,000 in compensatory damages for emotional distress based on racial discrimination. Ramsey, 772 F.2d at 1313. Ramsey's evidence of his emotional distress consisted of his testimony and that of a former colleague, Arthur Freeze, and Ramsey's physician, Dr. Robert Wells. See id. According to Ramsey, "he felt humiliated," "`about as low as any man could feel,'" "`slap[ped] . . . in the face,'" and "`insulted.'" Id. (quoting testimony) (alteration in original). Likewise, Freeze testified that Ramsey "felt `disgusted'" as a result of his being singled out for disparate discipline ostensibly based on Ramsey's race. Id. (quoting testimony). Thus, Ramsey and Freeze testified regarding the violation, but not about any demonstrable evidence of emotional distress. According to Dr. Wells,[2] Ramsey "was concerned about finding a

_____

[2] According to the Ramsey court, Dr. Wells treated Ramsey principally for a lung condition several years before the litigation and performed

17

job," explaining that Ramsey's unemployment "`preyed on him psychologically because he doesn't like [the] position his unemployment has put him in.'" Id. (quoting testimony) (alteration in original). Despite testifying that Ramsey's unemployment was a source of concern, Dr. Wells never "treated [Ramsey] for depression or prescribed any drugs for emotional distress." Id. After observing the "paucity of references to any emotional harm that [Ramsey] suffered as a result of defendant's discrimination" and "the absence of any evidence that [Ramsey] was treated for emotional harm or that he became depressed for any sustained period of time," the court concluded that the $75,000 compensatory damages award was "excessive compensation for the humiliation that [Ramsey] experienced," id., and accordingly vacated and remanded the damages award, conditional on Ramsey's accepting remittitur of $35,000 for his emotional distress, id. at 1314. In reaching this holding, the court relied on cases explaining that compensatory damages awards for constitutional violations require that the plaintiff demonstrate some objective manifestation of his emotional distress, such as "`sleeplessness, anxiety, embarrassment and depression,'" id. at 1313-14 (quoting Block v. R.H. Macy & Co., 712 F.2d 1241, 1245 (8th Cir. 1983)), or instances "in which the plaintiff suffered `seventeen months of incessant humiliation, harassment, and feelings of isolation,'" id. (quoting Carter v. Duncan-Huggins Ltd., 727 F.2d 1225, 1238 (D.C. Cir. 1984)).

Similarly, in Nekolny, the Seventh Circuit reversed compensatory damages awards for emotional distress based on the plaintiffs' testimony that they were "`very depressed,'" "`a little despondent and [lacking] motivation,'" and "`completely humiliated.'" Nekolny, 653 F.2d at 1172 (alteration in original). According to the court, this conclusory testimony was "insufficient to constitute proof of compensable mental or emotional injury" because "[a] single statement by a party that he was `"depressed,"' `"a little despondent,"' or even `"completely humiliated,"' . . . is not enough to establish injury . . . ." Id. at 1172-73. In reaching this conclusion, the court considered the facts and circumstances surrounding the challenged action,

_____

annual physicals for Ramsey. As far as the opinion reveals, Ramsey did not seek treatment from Dr. Wells for any afflictions stemming from the constitutional violation.

18

opining that they were not very egregious. See id. Nekolny, therefore, teaches that evidence to support a compensatory damages award based on a constitutional violation must be explained with competent testimony, not merely be a recital that emotional distress resulted from a constitutional violation; the injury must be demonstrable and capable of articulation.

Echoing the concerns of Biggs, Ramsey , and Nekolny, the Second Circuit in Cohen affirmed the district court's awarding no damages for a claim of emotional distress for a due process violation because the only evidence consisted of the plaintiff's own testimony, which is naturally "subjective" and subject to "vagueness." Cohen, 728 F.2d at 162. In reaching this ruling, the Second Circuit noted that Cohen testified respecting psychiatric consultations, but proffered no objective evidence of his emotional distress. See id.  The Cohen court's affirmance where subjective emotional distress is unsupported by objective evidence comports with the precept that any emotional distress be demonstrable.

Also demanding evidence of demonstrable emotional distress to recover compensatory damages for a constitutional violation is the Third Circuit's decision in Spence. Spence brought a First Amendment claim against her employer, contending that her transfer had been in retaliation for voicing her opinion, and a jury awarded her $25,000 in compensatory damages. See Spence, 806 F.2d at 1199. Spence's evidence of her emotional distress "consisted chiefly of [her] own testimony that she was depressed and humiliated . . . and that she lost her motive to be creative." Id.  at 1201. Specifically, "[t]here was no testimony that [Spence's] peers held her in any less esteem," nor was there evidence that Spence "suffered physically from her emotional distress or that she sought professional psychiatric counselling." Id. Not only did Spence offer no proof of physical or psychological injury, but she "suffered no loss of job or reduction in pay. Thus, she did not suffer emotional distress resulting from loss in income." Id. Given that Spence's evidence did not sufficiently explain her emotional distress, the Third Circuit concluded that "neither the circumstances nor the testimony established that there was `a reasonable probability, rather than a mere possibility, that damages due to emotional distress were in fact incurred as a result of [the challenged action].'" Id. (quoting district court order). Accordingly, for want of

19

sufficient evidence of emotional distress, the court affirmed the remittitur of Spence's compensatory damages to $2940, thus compensating only Spence's actual damages for travel expenses and wage taxes. Comparable to Biggs, Ramsey, Nekolny, and Cohen, the Spence court explained that emotional distress for a constitutional violation must be sufficiently demonstrable and capable of articulation as a prerequisite to recover compensatory damages.

Recently, in Hetzel, we expressed our reservation regarding an excessive compensatory damages award for emotional distress pursuant to Title VII and § 1983. Asserting that she was discriminated against on the basis of sex and national origin, Hetzel brought a variety of claims against her employer. Hetzel, 1996 WL 386464, at *1. A jury returned verdicts in favor of the employer, but found that Hetzel's superior, Police Chief Charlie Deane, retaliated against Hetzel for engaging in protected speech and awarded compensatory damages of $750,000 for emotional distress, which the district court remitted to $500,000. See id. Hetzel's evidence of her emotional distress "consisted almost exclusively of [her] own, brief conclusory statements." Id. at *2. In fewer than ten pages of transcript, she merely recited that she had "headaches, stress, trouble reading to her daughter, and problems with her family life as a result of [her employers'] actions." Id. In reversing and remanding the award of compensatory damages, we explained that while Hetzel's evidence of emotional distress entitled her to "minimal damages," id., there was "insufficient evidence" to support an award of $500,000, id. at *3. Citing the paucity of evidence to support such an award, we observed that"Hetzel presented no evidence corroborating the existence of any of her supposed specific harms," "remain[ed] . . . in good standing with the police department," displayed "no observable injuries or physical ailments," and had "never once seen a doctor, therapist, or other professional, or even sought the counsel of a friend, to help her deal with her what is supposedly an enormous problem overshadowing all aspects of her life." Id. at *2.

Amalgamating these principles, we conclude that a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation; however, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articu-

20

lated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award of compensatory damages. In marshaling the evidence necessary to establish emotional distress resulting from a constitutional violation, Carey instructs us that "genuine injury" is necessary. Carey, 435 U.S. at 264.

While the substance and content of testimony regarding a plaintiff's emotional distress are considered in awarding compensatory damages for emotional distress based on a constitutional violation, the federal courts examine other considerations in determining whether substantial evidence supports an award of compensatory damages for emotional distress. For instance, in affirming the remittitur of compensatory damages, the Third Circuit in Spence considered four factors: (1) the plaintiff did not lose the esteem of her peers; (2) the plaintiff suffered no physical injury as a consequence of her emotional distress; (3) the plaintiff received no psychological counseling; and (4) the plaintiff suffered no loss of income. See Spence, 806 F.2d at 1201. The Second Circuit followed Spence and considered the same factors in reviewing an award for a like claim challenged on sufficiency grounds. See Miner, 999 F.2d at 663. In Fitzgerald v. Mountain States Telephone and Telegraph Co., 68 F.3d 1257, 1265-66 (10th Cir. 1995), the Tenth Circuit contemplated the following factors in analyzing a claim for emotional distress premised on a constitutional violation: (1) the degree of emotional distress; (2) the context of the events surrounding the emotional distress; (3) the evidence tending to corroborate the plaintiff's testimony; (4) the nexus between the challenged conduct and the emotional distress; and (5) any mitigating circumstances. Various courts also consider medical attention, if any, that the plaintiff received as a result of the emotional distress, see, e.g., Hetzel, 1996 WL 386464, at *2; Fitzgerald, 68 F.3d at 1266; Miner, 999 F.2d at 663; Ramsey, 772 F.2d at 1313-14, and psychological or psychiatric treatment, if any, that the plaintiff received, see, e.g., Hetzel, 1996 WL 386464, at *2; Spence, 806 F.2d at 1201; Ramsey, 772 F.2d at 1313. All of these factors aid triers of fact in determining the propriety of awarding compensatory damages for emotional distress, as well as appellate courts in reviewing sufficiency challenges to such awards.

In this appeal, we express the same trepidation as our sister circuits regarding conclusory testimony with respect to the sufficiency of the

21

evidence supporting an award of compensatory damages based on emotional distress for a constitutional violation. We conclude that the evidence is not sufficient to support the awards and hence reverse. Here, the evidence simply fails to show any demonstrable emotional injury; the evidence of Appellees' emotional distress consisted exclusively of their own conclusory statements, which did not indicate how their alleged distress manifested itself. For instance, in articulating his emotional distress in testimony that spanned only a few pages of transcript, Officer Holl testified that he felt "betray[ed]," "[e]mbarrassed," and "[d]egraded . . . and passed over." (J.A. at 118.) Officer Holl stated, however, that he did not "change [his] procedures whatsoever," with respect to performing his duties. (J.A. at 119.)

Officer Corwin, whose pertinent testimony was approximately one and one-half pages in length, testified that he "guess[ed]" he felt "betrayed," "disappointed and embarrassed," explaining that he "wasn't aware that race was going to play any part" in the promotions practice. (J.A. at 124.) While testifying that he was betrayed, disappointed, and embarrassed, Officer Corwin also testified that he "tried not to let it affect me at all." (J.A. at 124.) Moreover, on cross-examination, Officer Corwin testified that he did not know his rank on the promotions roster.

In a like vein, Officer Elstrom testified that he felt "devastated" by the City's "perpetrat[ing its] deceit," explaining that he felt "used as a pawn," and "betrayed, lied to, used." (J.A. at 131, 134.) According to Officer Elstrom, he simply was unsure whether he had faith in his superiors in the police department because they told him there was no invidious discrimination regarding promotions, when, in fact, there was. Summarizing his claim, Officer Elstrom stated that his "self-esteem went from rather high. My confidence was up and all of a sudden it just drops." (J.A. at 134.) He did not testify that any consequence resulted from his drop in self-esteem.

Officer Holshouser stated that he had "been lied to [and] . . . deceived. [He felt] like a lot of [his] time, a lot of [his] personal time, personal stress, personal stress on [his] family" was a consequence of the City's unconstitutional conduct. (J.A. at 175.) According to Officer Holshouser, he "lost all respect for Chief Stone" and "for a lot of people in the department that were in the upper echelon of the com-

22

mand." (J.A. at 167-68.) More revealing is the fact that on cross-examination, Officer Holshouser stated that had he known that race played a role in the promotions practice, he would not have "spen[t his] own money to buy the books [for preparing for the promotions exam]," "spen[t his] own personal time to read the material," or "spen[t his] own personal time to participate in training that the department provided." (J.A. at 180.) These conclusory statements are the only evidence of these officers' emotional distress.

Analyzing these claims, we hold that the compensatory damages cannot stand. Here, Officers Holl, Corwin, Elstrom, and Holshouser never offered evidence of any need for medicine, see Hetzel, 1996 WL 386464, at *2; Ramsey, 772 F.2d at 1313; physical symptoms, see Spence, 806 F.2d at 1201; Ramsey, 772 F.2d at 1313; psychological disturbance or counseling, Hetzel, 1996 WL 386464, at *2; Spence, 806 F.2d at 1201; loss of income or pecuniary expense, see id.; a description of their emotional distress, see Biggs, 892 F.2d at 1304; or how their conduct changed or if others observed their conduct change, see Carey, 435 U.S. at 264 n.20. Also conspicuously absent from their evidence is any corroboration of their emotional distress or any manifestation it may have assumed. See Hetzel, 1996 WL 386464, at *2 (observing that the plaintiff displayed "no observable injuries or physical ailments"). Also, as opposed to Hetzel, in which there were ten pages of testimony regarding the emotional distress, here, there was often less testimony. Given this paucity of explanation or description regarding their emotional distress, we conclude that Appellees' evidence fails to show "genuine injury" evidenced by "nature and circumstances of the wrong and its effect" under Carey. In addition, Appellees' evidence fails to exhibit any of the factors that the Spence, Miner, and Fitzgerald courts considered in assessing emotional distress claims for constitutional violations. Here, we are confronted with the bald, conclusory assertions that Appellees felt betrayed and deceived, but there was no evidence concerning any demonstrable injury suffered. Such vague, conclusory statements do not constitute sufficient evidence, see Biggs , 892 F.2d at 1304-05; Nekolny, 653 F.2d at 1172-73, and we reverse the compensatory damages awards with respect to Officers Corwin, Holl, Elstrom, and Holshouser. In our opinion, this testimony does not satisfy the requirement that Appellees show actual injury by sufficient evidence; their injuries, if any, are properly characterized as disappointment

23

with their superiors, rather than emotional distress. Accordingly, the compensatory damages awards rendered in favor of Officers Corwin, Holl, Elstrom, and Holshouser are reversed.

In reaching our conclusion, we do not hold that compensatory damages for emotional distress can never be awarded based exclusively on a plaintiff's testimony, see, e.g., Hetzel, 1996 WL 386464, at *2; Rakovich I, 819 F.2d 1399 & n.6; Chalmers , 762 F.2d at 761; Williams, 660 F.2d at 1272-73, but we simply hold that in this case, the testimony was insufficient to support an award of damages. Here, these officers did not "reasonably and sufficiently explain the circumstances of [their] injury," but rather"resort[ed] to mere conclusory statements," which cannot support an award of compensatory damages. See Biggs, 892 F.2d at 1304. Because these Appellees did suffer a constitutional violation, but failed to prove emotional distress warranting compensatory damages, we award them nominal damages in the sum of one dollar each. See Carey, 435 U.S. at 266 (sua sponte awarding one dollar in nominal damages because civil rights plaintiffs failed to prove actual damages); Cohen, 728 F.2d at 162 (stating that the "better practice" is to award one dollar nominal damages for a constitutional violation if the plaintiff's evidence cannot support "any substantial sum" for damages and sua sponte awarding such nominal damages on appeal).

The compensatory damages awarded to Officers Carlton, Price, and Holland are likewise problematic because in our view, the evidence these Appellees provided tends to support the conclusion that their damages arose not from emotional distress as a consequence of invidious discrimination, but rather from the City's failure to promote them. Because none of the Appellees would have been promoted even in the absence of a violation, however, they are not entitled to damages due to the denial of promotions.

For example, Officer Carlton, whose testimony is roughly four pages in length, related his emotional distress to the fact that he was the victim of the City's quota system: Having achieved exceptional ratings, he felt that he should have been promoted to sergeant, yet was not. For instance, Officer Carlton stated that he felt "slapped . . . in the face" because, according to him, he was "more qualified to be a sergeant" than some of those who were promoted to sergeant. (J.A.

24

at 155.) Despite his supposed emotional distress, Officer Carlton testified that he continued to perform his duties just as he had prior to this litigation, explaining that he was "a professional." (J.A. at 156.)

Officer Price's testimony reveals that he was upset that black officers who scored lower on the evaluations criteria for promotion to sergeant were promoted, while he was not, simply because he was Caucasian. According to Officer Price, he "d[idn't] know what to believe. And after a while it kind of takes the wind out of anything that you're doing." (J.A. at 161.) Summarizing his testimony, Officer Price stated that the City's conduct was "a giant step backwards" because "[t]here just seems to be a problem with the fact that [the promotions practice] applies to one race and not to the other. And I take that very seriously." (J.A. at 161.)

Officer Holland's testimony establishes the same principle, and hence the same infirmity. According to Officer Holland, he was displeased by the fact that different criteria applied to different races regarding promotions, specifically asserting that he should be compensated for the time spent in preparing for the promotions exam. Explaining his emotional distress, Officer Holland stated that he "felt kind of like a patsy" because "one set of rules applied to white officers," but if "the need arose or the testing procedure didn't deliver the expected number of minority candidates, a new set of rules were imposed." (J.A. at 184.) On cross-examination, Officer Holland stated that he should be compensated for preparing for the promotions examination, thereby establishing that at least part of his damages were not based on invidious discrimination. Officers Carlton, Price, and Holland cannot separate their claims of emotional distress from their failure to receive promotions; accordingly, they cannot recover compensatory damages.

Even accepting the contention that the officers' claims of emotional distress are exclusively grounded in the constitutional violation, their testimony is equally vague and conclusory. The evidence of Officer Carlton's emotional distress was that he felt "slapped . . . in the face" as a result of the violation, but he offers no other explanation or evidence of his emotional distress. According to Officer Price, he was fearful of the police force and lost faith in it, but there is no testimony describing the emotional distress he suffered. Officer Hol-

25

land complained that he felt like a "patsy," but, like his colleagues' testimony, there is nothing more regarding his emotional distress. Like Officers Holl's, Corwin's, Elstrom's, and Holshouser's, Officers Carlton's, Price's, and Holland's testimony cannot support an award of compensatory damages. Accordingly, we reverse their compensatory damages awards. Again, we do not hold that a plaintiff's testimony standing alone is insufficient as a matter of law to support an award of compensatory damages, but in this case, the testimony was not sufficient to do so. Like their colleagues, Officers Carlton, Price, and Holland are entitled to one dollar nominal damages.

IV.

We hold that Appellees had standing to sue, and they were not limited to injunctive or declaratory relief. Rather, they were entitled also to recover compensatory damages for demonstrable emotional distress if their injuries could be attributed to the actual constitutional violation. Appellees, however, failed to offer sufficient proof of emotional distress. Accordingly, the award of compensatory damages in favor of Appellees is reversed, and we award each Appellee one dollar in nominal damages.

AFFIRMED IN PART AND REVERSED IN PART

26