**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JONAS B. CROOKE INTERESTS,
INCORPORATED,
Plaintiff-Appellee,

v.

CTL ENGINEERING, INCORPORATED,

No. 97-1227

Defendant-Appellant,

and

DON DEWEY, P.E.; MIGUEL R.
FRISCO,
Defendants.

JONAS B. CROOKE INTERESTS,
INCORPORATED,
Plaintiff-Appellant,

v.

CTL ENGINEERING, INCORPORATED,

No. 97-1357

Defendant-Appellee,

and

DON DEWEY, P.E.; MIGUEL R.
FRISCO,
Defendants.

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-96-494-3)

Argued: October 28, 1998

Decided: March 29, 1999

Before WIDENER and WILKINS, Circuit Judges, and
G. ROSS ANDERSON, JR., United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by unpublished opin-
ion. Judge Wilkins wrote the majority opinion, in which Judge Ander-
son joined. Judge Widener wrote a concurring and dissenting opinion.

_____

**COUNSEL**

**ARGUED:** David Ernest Boelzner, WRIGHT, ROBINSON,
OSTHIMER & TATUM, Richmond, Virginia, for Appellant. Cheryl
G. Ragsdale, HUNTON & WILLIAMS, Richmond, Virginia, for
Appellee. **ON BRIEF:** Murray H. Wright, WRIGHT, ROBINSON,
OSTHIMER & TATUM, Richmond, Virginia, for Appellant. Albert
Diaz, HUNTON & WILLIAMS, Raleigh, North Carolina, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

WILKINS, Circuit Judge:

Jonas B. Crooke Interests, Incorporated (JCI) brought this action
against CTL Engineering, Incorporated (CTL), alleging various
causes of action arising out of CTL's negligent performance of an
environmental assessment. JCI obtained a jury verdict of $300,027,
and CTL now appeals the denial of its motion for judgment as a mat-
ter of law on JCI's claims for breach of contract and professional neg-
ligence, see Fed. R. Civ. P. 50, and for a new trial on damages, see
Fed. R. Civ. P. 59. JCI cross appeals an order of the district court

2

granting CTL summary judgment on JCI's claim for constructive fraud and granting CTL partial summary judgment on JCI's breach of contract and negligence claims for loss of an expected fee it would have earned from building an apartment complex on the assessed property. For the reasons set forth below, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

I.

In July 1995, JCI purchased an option to buy a tract of land that it intended to develop. The option agreement provided for a feasibility period during which JCI could conduct studies and investigations of the property before exercising its option. JCI promptly retained CTL to conduct an environmental assessment of the property. CTL completed the assessment and reported that its investigation revealed no evidence of a recognized environmental condition on site.

Unable to obtain financing to purchase the property by the expiration of the option, JCI negotiated a three-month extension of its purchase option. With approximately two weeks remaining on the extension, JCI had negotiated a proposed agreement for development of the property with Northwestern Mutual Life Insurance Company (Northwestern). Under the proposed terms, JCI was to assign its purchase rights and the fruits of its predevelopment activities to Northwestern for a fee of $189,443 (the assignment fee) [1]--which was intended to reimburse JCI for enumerated expenses it had incurred-- and Northwestern was to retain JCI to develop the property for a fee of $530,000 (the development fee), to be paid in installments as the project progressed. Before closing, however, Northwestern conducted an environmental assessment of its own. That assessment revealed several recognized adverse environmental conditions on the property that CTL had failed to identify. As a result, Northwestern decided to

_____

[1] A March 15, 1996 letter from Jonas Crooke, who owns JCI, to a Northwestern representative enumerated reimbursable expenses of $174,162. The letter listed $87,719 for "Architect Fee and expenses," but stated in a footnote that that amount did not represent the total cost. J.A. 524. Crooke testified that Northwestern had agreed to reimburse JCI for the full amount of the architectural fee and related costs, which was $103,000.

spend additional time conducting further studies on the property. When JCI was unable to negotiate another extension of its purchase option, the option expired and the land was sold to another buyer.

JCI brought this action for breach of contract, professional negligence, and constructive fraud, seeking to recover damages for the money and resources it had expended in vain on the property as well as for the loss of benefits it would have gained from the sales and development agreement it had negotiated with Northwestern. Following discovery, CTL moved for summary judgment on all of the claims. The district court granted partial summary judgment to CTL on JCI's breach of contract and negligence claims for the $530,000 development fee on the ground that the damages sought were speculative. However, the court denied summary judgment as to JCI's breach of contract and negligence claims for the incurrence of its predevelopment expenses and for loss of opportunity for reimbursement of those expenses. The district court also granted summary judgment to CTL on JCI's constructive fraud claim.

At trial, JCI offered evidence that it had expended $300,027 in money and other resources on the project, including evidence of two major expenditures not reimbursable under the proposed agreement with Northwestern: $100,800 in internal labor expenditures and $11,000 in interest paid by JCI to finance the predevelopment expenses. Subsequently, a jury returned a verdict for $300,027 in JCI's favor.[2] CTL then unsuccessfully moved for judgment as a matter of law, or in the alternative, a new trial on damages.

_____

[2] The remainder of the discrepancy between the amount sought by JCI and the amount reimbursable under the proposed agreement is due to the fact that under the terms of the proposed agreement, JCI was to be reimbursed for $7,916 for "Legal-Purchase Agreement, Title exam," J.A. 524, but JCI offered evidence that it actually incurred $1,500 in miscellaneous expenses and $5,200 in legal fees.

4

II.

A.

CTL first contends that the district court erred in denying its motion for judgment as a matter of law on JCI's professional negligence claim because JCI's claimed injury was for a solely economic loss. We disagree.

Under Virginia law, "economic losses may be recovered under a negligence theory" as long as there is privity of contract between the parties. Ward v. Ernst & Young, 435 S.E.2d 628, 632 n.3 (Va. 1993); cf. Gerald M. Moore & Son, Inc. v. Drewry, 467 S.E.2d 811, 813 (Va. 1996) (holding that under the economic-loss doctrine, damages for a solely economic injury are not recoverable in an action for professional negligence absent a contractual relationship between the plaintiff and defendant). Here, because CTL and JCI had a contractual relationship, JCI was entitled to recover damages for its economic loss under a negligence theory.

CTL argues that the above-cited language in Ward is dictum and is based on a misunderstanding of Virginia's commonly stated rule that "in the absence of privity, a person cannot be held liable for economic loss damages caused by his negligent performance of a contract." Gerald M. Moore & Son, Inc., 467 S.E.2d at 813. CTL argues that the effect of the rule is not that solely economic losses can be recoverable under a negligence theory when the parties are in privity, but rather "that losses arising from breach of a contract are recoverable in contract only, and if there is no contract, there can be no recovery." Brief of Appellant at 21. CTL's suggested reading of Ward, however, is belied by the opinion in Gerald M. Moore & Son, Inc., which makes clear that privity of contract is a "requirement for recovery of purely economic loss damages in negligence actions." Gerald M. Moore & Son, Inc., 467 S.E.2d at 813 (emphasis added).

CTL also maintains that it was entitled to judgment as a matter of law on its professional negligence claim because a professional's duty of reasonable care arises solely from contract. That argument is without merit, however. See Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp., 457 S.E.2d 28, 32 (Va. 1995) (explaining that

professional negligence actions generally "are governed by the same principles applicable to other negligence actions" and the duty of reasonable care on the part of professionals "arises out of the relationship of the parties, irrespective of a contract").

B.

CTL argues alternatively that, assuming that damages for solely economic loss are recoverable in a negligence action, it was entitled to judgment as a matter of law on that claim because the evidence was insufficient to prove that CTL's failure to notify JCI of the environmental conditions on the property caused it to suffer any injury. Again, we disagree.

We review the denial of judgment as a matter of law de novo to determine whether the evidence presented at trial, viewed in the light most favorable to the nonmovant, supports the jury finding on the issue in question. See Price v. City of Charlotte, N.C., 93 F.3d 1241, 1249-50 (4th Cir. 1996). To prove a claim for professional negligence, a plaintiff must show that a professional relationship giving rise to a duty of reasonable care existed between the plaintiff and the defendant, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's claimed damages. See Gregory v. Hawkins, 468 S.E.2d 891, 893 (Va. 1996). CTL does not argue the sufficiency of the evidence regarding existence of the professional duty or breach of that duty, but rather contends that the evidence was insufficient to prove that its breach proximately caused JCI's claimed damages.

"A proximate cause ... is a cause which in natural and continuous sequence produces the ... damage. It is a cause without which the ... damage would not have occurred." Clohessy v. Weiler, 462 S.E.2d 94, 98 (Va. 1995) (internal quotation marks omitted). It is not necessary that the defendant anticipate "[t]he precise injury"; rather, "[i]t is enough if the act is such that the party ought to have anticipated that it was liable to result in injury to others." Atlantic Coast Line R.R. Co. v. Wheeler, 132 S.E. 517, 518 (Va. 1926), aff'd on reh'g, 136 S.E. 570 (Va. 1927). CTL does not dispute that it ought to have anticipated that its failure to perform the assessment properly was likely to cause some injury to JCI. Instead, CTL contends that the evidence was

6

insufficient to prove that its negligence proximately caused the injury actually suffered by JCI.

JCI argued that it was damaged in two ways as a result of CTL's breach: First, it incurred expenses on the project in reliance on the environmental assessment that it would not have incurred had the assessment been performed correctly; and second, the delay caused by the subsequent discovery of the adverse environmental conditions caused it to lose reimbursement of those expenses under the agreement negotiated with Northwestern.

Regarding the first damages theory, JCI simply presented no evidence that it would have abandoned the project prior to incurring the predevelopment expenses had CTL performed the environmental assessment appropriately. In fact, JCI conceded in its brief that it probably would have continued with the project even if CTL had notified it of the environmental conditions. Accordingly, the evidence was insufficient to support a verdict for JCI under that theory.

We conclude, however, that JCI did offer evidence from which a jury reasonably could have inferred that, but for CTL's failure to conduct the assessment properly, JCI would have cleaned up the property earlier, consummated its agreement with Northwestern, and been reimbursed for certain enumerated expenses by virtue of the $189,443 assignment fee. Peter Jahn, who negotiated the proposed agreement with JCI on behalf of Northwestern, testified that the agreement would have been consummated and the property purchased had it not been for the discovery of the environmental problem. Once the agreement had been finalized, JCI would have been entitled to the entire $189,443 assignment fee when Northwestern closed on the property. Therefore, the district court correctly denied CTL's motion for judgment as a matter of law on the negligence claim.

C.

CTL contends, alternatively, that because JCI's loss of the assignment fee was the only injury that the jury reasonably could have found to have been proximately caused by CTL's negligence and the amount of the jury verdict far exceeded the amount that JCI would have been reimbursed under the proposed agreement, the district court

7

abused its discretion in denying CTL's motion for a new trial on damages.

The decision of a district court to deny a motion for a new trial for excessiveness of the verdict is reviewable only for abuse of discretion. See Wadsworth v. Clindon, 846 F.2d 265, 266 (4th Cir. 1988) (per curiam). An award of damages must "stand unless no substantial evidence is presented to support it, it is against the clear weight of the evidence, it is based upon evidence that is false, or it will result in a miscarriage of justice." Barber v. Whirlpool Corp., 34 F.3d 1268, 1279 (4th Cir. 1994). The scope of a new trial may be limited to trial of the damages issue when "there is no substantial indication that the liability and damage issues are inextricably interwoven, or that the first jury verdict was the result of a compromise of the liability and damage questions." Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 599 (4th Cir. 1996) (internal quotation marks omitted).

Here, because the terms negotiated between JCI and Northwestern called for reimbursement of less than $200,000 in predevelopment expenses, the evidence did not support an award of $300,027. And, there can be no doubt that the verdict was not the result of a compromise of liability and damages because the jury returned a verdict in the full amount JCI requested. Accordingly, we reverse the order of the district court denying CTL's motion for a new trial to determine the damages proximately caused by CTL's professional negligence.

III.

JCI argues on cross appeal that the district court erred in granting partial summary judgment against it regarding the professional negligence claim for damages in the amount of the development fee. JCI contends that the evidence presented created a genuine issue of fact regarding whether it would have collected the $530,000 fee but for CTL's breach. We disagree.

Summary judgment is proper if, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

8

the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

Although the evidence presented was sufficient to create an issue of fact regarding whether CTL's breach prevented JCI from consummating its agreement with Northwestern, consummation of the agreement entitled JCI only to the assignment fee. The development fee, on the other hand, was to be paid in installments as the project progressed. Absent evidence tending to prove that JCI and Northwestern actually would have completed the development or at least some fraction thereof, JCI failed to create a genuine issue of fact regarding whether it ever would have earned any portion of the development fee. We therefore conclude that the district court correctly granted partial summary judgment on JCI's claim for damages in the amount of the development fee. See Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (explaining that a genuine issue of material fact cannot be created "through mere speculation").

IV.

In sum, we affirm the denial of CTL's motion for judgment as a matter of law on JCI's negligence claim and the grant of partial summary judgment on JCI's negligence claim for the $530,000 development fee. However, we reverse the denial of CTL's motion for a new trial on the issue of the damages proximately caused by CTL's negligent performance of the environmental assessment. Accordingly, we remand for a new trial on damages as to the professional negligence claim.**3**

_____

**3** We conclude that JCI has established liability for and is entitled to recover all damages proximately caused by CTL's negligent performance of the assessment and that this measure of damages is at least as great as JCI would have under a breach of contract or constructive fraud theory. See Wooldridge v. Echelon Serv. Co., 416 S.E.2d 441, 443 (Va. 1992) (explaining that in a breach of contract action, a plaintiff must prove that his damages were proximately caused by the alleged breach); Murray v. Hadid, 385 S.E.2d 898, 903-04 (Va. 1989) (holding that in a fraud action, a plaintiff must prove that his damages were proximately caused by the alleged fraud). We therefore do not address the parties' allegations of error concerning those two claims.

<u>AFFIRMED IN PART, REVERSED IN PART,</u>
<u>AND REMANDED</u>

WIDENER, Circuit Judge, Concurring and Dissenting:

I concur in all of the opinion of the majority except a part of Part IV.

I would affirm, except that I would require a modification of the judgment to the sum of $189,443. See Wright & A. Miller, <u>Federal Practice and Procedure</u>, § 2815 (1995).

10