**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOSEPH MICHAEL DONOVAN COOPER,
Plaintiff-Appellee,

v.

LEE COUNTY BOARD OF SUPERVISORS,
Defendant-Appellant,

and

MARTY JAY HENSLEY, Individually
and in his capacity as a member of
the Lee County Board of
Supervisors; JAMES WILLIAM

SUTPHIN, III, Individually and in his
capacity as a member of the Lee
County Board of Supervisors;
DONALD MERLE WILLIAMS,
Individually and in his official
capacity as a member of the Lee
County Board of Supervisors;
TIMOTHY WAYNE BELCHER,
Individually and in his capacity as a
member of the Lee County Board
of Supervisors,
Defendants.

No. 98-2083

Appeal from the United States District Court
for the Western District of Virginia, at Big Stone Gap.
James P. Jones, District Judge.
(CA-96-264-B)

Argued: April 7, 1999

Decided: August 19, 1999

Before WILKINSON, Chief Judge, and
HAMILTON and WILLIAMS, Circuit Judges.

_____

Reversed by unpublished per curiam opinion. Chief Judge Wilkinson
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Steven Ray Minor, ELLIOTT, LAWSON & POM-
RENKE, Bristol, Virginia, for Appellant. Gerald L. Gray, LAW
FIRM OF GERALD L. GRAY, Clintwood, Virginia, for Appellee.
**ON BRIEF:** Roy M. Jessee, MULLINS, HARRIS & JESSEE, Nor-
ton, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The principal issue presented in this appeal is whether the evidence
presented at trial, viewed in a light most favorable to Joseph Cooper
(Cooper), was sufficient to allow a reasonable jury to render a verdict
in favor of Cooper and against the Lee County, Virginia Board of
Supervisors (the Board), on Cooper's 42 U.S.C. § 1983 claim that the
Board violated his right of political affiliation as guaranteed by the
First Amendment by terminating his health insurance and other bene-
fits because of his political affiliation. Because we conclude that the
evidence presented at trial, viewed in a light most favorable to Coo-
per, was insufficient to allow a reasonable jury to render a verdict in
his favor, we reverse the judgment of the district court.

2

I

A

Each county in the Commonwealth of Virginia has a Commissioner of Revenue. See Va. Const. art. VII,§ 4. Each Commissioner of Revenue is an independent constitutional officer. See id.[1] The salaries of constitutional officers and their staff are paid by each county, but each county is reimbursed for these expenditures by the Compensation Board of the Commonwealth of Virginia (the Compensation Board).

The Compensation Board also reimburses each county for the costs of payroll taxes, group life insurance, and retirement system benefits for the permanent, salaried staff of constitutional officers. Additionally, the Compensation Board allocates certain lump sum amounts to some constitutional officers to be used to hire additional employees, designated by the Compensation Board as temporary employees. It is within the constitutional officer's discretion to determine how this money is used. For example, with the lump sum amount allocated, the constitutional officer may hire two employees who work twenty hours per week each, or may hire one employee to work forty hours per week. The Compensation Board does not reimburse each county for the costs of group life insurance and retirement system benefits for temporary employees, although it does reimburse each county for their payroll taxes. Under state law, each county is required to provide group life, accident, and health insurance to constitutional officers and their employees on the same basis as it provides benefits to its own employees. See Va. Code Ann. § 15.2-1517.

B

In February 1992, Cooper, a Democrat, was hired to work full-time as a deputy commissioner by the Lee County Commissioner of Revenue, Tommy Livesay, also a Democrat.[2] At all times relevant to this

_____

[1] Other constitutional officers in each county include the Commonwealth's Attorney, the Sheriff, the Treasurer, and the Circuit Court Clerk of Court. See Va. Const. art. VII, § 4.
[2] At trial, Cooper presented evidence that he has been an active Democrat in rural Lee County. Cooper displayed Democratic bumper stickers

3

case, Cooper's position was funded by lump sum money allocated by the Compensation Board to pay temporary employees. At the time he was hired, Lee County provided Cooper group life insurance and retirement system benefits, however Lee County was not reimbursed by the Compensation Board for any of these benefits since the Compensation Board classified Cooper's position as temporary. Cooper was provided these benefits even though temporary employees are not eligible for these benefits under Virginia law. See Va. Code Ann. §§ 51.1-132 and 51.1-502.

At the time he was hired, Lee County also provided Cooper with health insurance benefits. Lee County's group health insurance is obtained through a voluntary, state-sponsored program authorized by Virginia Annotated Code § 2.1-20.1:02, under which the Commonwealth of Virginia's Department of Personnel and Training (DPT) defines and administers the state health insurance program. Under DPT regulations, the definitions set forth by the local employer in the local employer's application define who are the full-time and part-time employees eligible to participate in the state health insurance program. See 1 Va. Admin. Code § 55-20-320(B).

From its inception, Lee County's health insurance program has excluded temporary employees. When Lee County enrolled in the state health insurance program in 1990, it executed an "Adoption Agreement," which includes definitions of eligible employees. See 1 Va. Admin. Code § 55-20-20 ("`Adoption agreement' means an agreement executed between a local employer and the department specifying the terms and conditions of the local employer's participation in the health benefits program."). The Adoption Agreement provides that temporary employees are not eligible for health insurance

_____

on his vehicle, displayed Democratic signs on his and his relatives' property, attended Democratic dinners and drove a vehicle displaying Democratic signs in the Lee County Tobacco Festival parade in October 1995. Cooper also worked the polls on election day in 1995 at the Woodway Precinct, campaigning for Democratic candidates. A member of the Board, Donald Williams, then a candidate, was also working the polls in Cooper's vicinity throughout the day and saw Cooper campaigning for his opponent.

benefits and permanent employees working thirty-five hours or more per week are eligible.

C

The five-member Board was comprised of a Democratic majority until January 1996. In the 1995 general elections, the Republican Party gained control of the Board, and an incumbent Republican member, Marty Hensley (Hensley), was elected chairman. Of the five members of the Board elected in 1995, four are Republicans: Hensley, James Sutphin (Sutphin), Donald Williams (Williams), and Timothy Belcher (Belcher).

Shortly after the newly elected members of the Board assumed their duties, several members of the Board asked the Acting County Administrator, Helen Duncan, if she needed additional office space, and she responded in the affirmative. To provide Duncan additional office space, the Board instructed Livesay on January 19, 1996, to vacate the office used by Cooper, which was located on the same floor as Duncan's. Livesay protested this action by personally visiting with each member of the Board and explaining the necessity of keeping Cooper's office space for the Commissioner of Revenue's use. After each member of the Board toured the Commissioner of Revenue's office space, the decision to instruct Livesay to vacate the office used by Cooper was put on "indefinite hold."

In June 1996, at a regularly scheduled meeting, the Board, with the Board's lone Democrat, Claude Ray (Ray), dissenting, voted to discontinue funding benefits for employees that the Compensation Board did not consider permanent. In effect, the Board voted to stop funding benefits that Lee County was not being reimbursed for by the Compensation Board, i.e., group life insurance and retirement system benefits provided to employees designated by the Compensation Board as temporary. At the same meeting, the Board approved a budget by a unanimous vote that included no funding for Cooper's benefits. By letter dated July 2, 1996, the County Administrator, Dane Poe (Poe), informed Cooper that, because the Compensation Board classified his position as temporary, he was not eligible for benefits. According to Poe's letter, this action was taken "to insure fair and equal treatment of all part-time and temporary workers."

5

At a Board meeting on July 19, 1996, Livesay appealed the action taken by the Board as it applied to Cooper. One of the Republican members of the Board, Sutphin, explained that the Board's action

> was not an action against Joey Cooper, but on my part it was in an effort to, to achieve uniformity in the County's employment policies . . ., I am not wanting to deprive him of those things, but we do at some point in time need to achieve some kind of uniformity . . . and if someone else slipped through the cracks, . . . then maybe we need to take a close look at, at them, too.

At the July 19, 1996 meeting, Livesay also informed the Board that an employee of the Commonwealth's Attorney, Assistant Commonwealth's Attorney, Greg Edwards, a Republican, was receiving benefits even though he was "part-time." In response, each member of the Board agreed that Lee County should discontinue Edwards' benefits. On July 23, 1996, by letter, Poe informed Edwards that the Board voted to discontinue funding benefits of employees that the Compensation Board did not consider permanent, and therefore would not pay for Edwards' health insurance.[3]

The Board did not ultimately discontinue Edwards' health insurance benefits because Edwards informed the Board that his position was designated as a permanent salaried position by the Compensation Board and the "part-time" designation only connoted that some assistant Commonwealth's attorneys are also allowed to engage in the private practice of law. See Va. Code Ann. § 15.2-1633.

As a result of the Board's decision to discontinue funding benefits for employees that the Compensation Board designated as temporary, one employee in the Treasurer's office, and three magistrates, all of whom are Democrats, lost some benefits that were funded by Lee County. No other employee designated by the Compensation Board

_____

[3] Health insurance was the only benefit funded directly by Lee County. Because Edwards was designated as a permanent employee by the Compensation Board, Lee County's costs for Edwards' group life insurance and retirement system benefits were reimbursed by the Compensation Board.

as temporary, including Cooper's co-worker, June Cooney (Cooney), have ever received benefits.

D

On December 23, 1996, Cooper filed a complaint against the Board and four of its members (Hensley, Sutphin, Williams, and Belcher) in the United States District Court for the Western District of Virginia. In Count One of his complaint, Cooper alleged that the Board and Hensley, Sutphin, Williams, and Belcher, individually, violated Cooper's right of political affiliation as guaranteed by the First Amendment when the Board terminated his health insurance and other benefits because of his political affiliation. Count Two alleged that the Board and Hensley, Sutphin, Williams, and Belcher, individually, violated Cooper's Fourteenth Amendment right to due process of law as a consequence of the First Amendment deprivation alleged in Count One. Counts Three and Four alleged that Hensley violated certain provisions of Virginia law, and in the course of doing so, caused emotional distress to Cooper.

On February 18, 1997, the Board and the four individual members of the Board named in the complaint moved to dismiss the complaint. See Fed. R. Civ. 12(b)(6). Because matters outside the complaint were presented to and not excluded by the district court, the district court treated the motion to dismiss as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(b). The district court granted the motion in part and denied it in part. With respect to those portions of the complaint pertaining to the four members of the Board, the district court granted the motion. The district court dismissed with prejudice Counts One and Two as they applied to the members of the Board named in the complaint and dismissed without prejudice Counts Three and Four against Hensley. With respect to those portions of Counts One and Two pertaining to the Board, the district court denied the motion.

On January 8, 1998, Cooper's case against the Board proceeded to trial. At the conclusion of Cooper's evidence and at the close of all evidence, the Board moved for judgment as a matter of law. See Fed. R. Civ. P. 50(a). The district court denied each motion. In its instructions to the jury with respect to Count One, the district court, in accor-

7

dance with the burden-shifting framework set forth in <u>Mt. Healthy City School District Board v. Doyle</u>, 429 U.S. 274, 287 (1977), instructed the jury that to find in Cooper's favor it had to find by a preponderance of the evidence that Cooper engaged in constitutionally protected conduct and that his constitutionally protected conduct was a substantial or motivating factor in the decision to terminate his health insurance and other benefits. The district court further instructed the jury that if Cooper met this burden, the Board could only escape liability by proving by a preponderance of the evidence that it would have terminated Cooper's health insurance and other benefits absent Cooper's protected conduct.[4]

At the conclusion of the trial, by special verdict, the jury found in favor of Cooper and awarded him damages in the amount of $85,000.[5] By agreement of the parties, the issues of restitution and reinstatement of benefits were resolved by the district court after the trial. On March 9, 1998, the district court ordered no restitution, but ordered reinstatement of Cooper's health insurance and other benefits. On the same day, the district court entered judgment, granting Cooper $85,000 in damages and reinstatement of his health insurance and other benefits.

On March 18, 1998, the Board moved for judgment as a matter of law or, in the alternative, for a new trial or remittitur, or, in the alternative, to amend the judgment. <u>See</u> Fed. R. Civ. P. 50(b), 52(b), 59(a),

_____

[4] Apparently, at some point during the litigation, Count Two, which alleged that Cooper was deprived of his Fourteenth Amendment right to due process of law as a consequence of the First Amendment deprivation alleged in Count One, was abandoned by Cooper. No jury instruction on Count Two and no objection by either party concerning Count Two appears in the record. Further, the parties make no mention of Count Two in their respective briefs.

[5] In its special verdict, the jury answered "yes" to the following question: "Has plaintiff Joseph Cooper proved by a preponderance of the evidence that his party affiliation was a substantial or motivating factor in the decision of a majority of the members of the Lee County Board of Supervisors to stop funding for his benefits?"; and "no" to the following question: "Has defendant Lee County Board of Supervisors proved by a preponderance of the evidence that a majority of the Board would have voted to stop funding for Joseph Cooper's benefits for a reason or reasons other than Cooper's party affiliation?"

8

and 59(e). On June 18, 1998, the district court denied these motions, except that the district court ordered a new trial unless Cooper agreed to a remittitur of the damages award to $15,000. On June 23, 1998, Cooper accepted the remittitur in lieu of having a new trial. The following day, the district court ordered the reduction of the damages portion of its judgment to $15,000. The Board filed a timely notice of appeal.

II

On appeal, the Board argues that the district court erred in denying its post-trial motion for judgment as a matter of law. See Fed. R. Civ. P. 50(b). According to the Board, there is insufficient evidence in the record to support the jury's verdict in favor of Cooper.

We review de novo the district court's denial of a motion for judgment as a matter of law. See Benesh v. Amphenol Corp. (In re Wildewood Litigation), 52 F.3d 499, 502 (4th Cir. 1995). A district court may grant a motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party . . . ." Fed. F. Civ. P. 50(a). Judgment as a matter of law under Federal Rule of Civil Procedure 50 is proper "when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." Singer v. Dungan, 45 F.3d 823, 826 (4th Cir. 1995) (citation and internal quotation marks omitted). Succinctly put, under Rule 50, we must consider the evidence, and all reasonable inferences to be drawn therefrom, in the light most favorable to Cooper to determine whether the evidence presented at trial was sufficient to allow a reasonable jury to render a verdict in his favor. See Price v. City of Charlotte, 93 F.3d 1241, 1249-50 (4th Cir. 1996).

In Elrod v. Burns, 427 U.S. 347 (1976), a divided Supreme Court granted some First Amendment protection to employees terminated because of their political affiliation where political affiliation was not a reasonably appropriate requirement for the job. See id. at 359 (plurality opinion). As Justice Stewart, concurring, said, a "nonpolicy-making, nonconfidential government employee [cannot] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." Id. at

375 (Stewart, J., concurring in judgment). In <u>Branti v. Finkel</u>, 445 U.S. 507 (1980), the Supreme Court reaffirmed <u>Elrod</u>, and explained that the First Amendment prohibits the termination of a public employee because of the employee's political affiliation unless "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." <u>Branti</u>, 445 U.S. at 518.[6] The <u>Elrod</u>/<u>Branti</u> rulehas been extended to promotion, transfer, recall, and hiring decisions based on political affiliation, <u>see Rutan v. Republican Party of Ill.</u>, 497 U.S. 62, 79 (1990), the denial of compensation, <u>see Lieberman v. Reisman</u>, 857 F.2d 896, 900 (2d Cir. 1988), demotion, <u>see McEvoy v. Spencer</u>, 124 F.3d 92, 103-05 (2d Cir. 1997), and protection of independent contractors, <u>see Board of County Comm'rs v. Umbehr</u>, 116 S. Ct. 2342, 2345-52 (1996) (prohibiting termination of a contract in reprisal for contractor's criticism of county government); <u>O'Hare Truck Serv., Inc. v. City of Northlake</u>, 116 S. Ct. 2353, 2355-61 (1996) (prohibiting removal of an independent contractor from a list of towing services employed by the City of Northlake in retaliation for supporting opposing political party). The justification behind the <u>Elrod</u>/<u>Branti</u> line of cases is that

> [p]atronage . . . to the extent it compels or restrains belief and association is inimical to the process which undergirds our system of government and is at war with the deeper traditions of democracy embodied in the First Amendment. As such, the practice unavoidably confronts decisions by this Court either invalidating or recognizing as invalid government action that inhibits belief and association through the conditioning of public employment on political faith.

<u>Elrod</u>, 427 U.S. at 357 (citation and internal quotation marks omitted).[7]

_____

[6] The Board has never suggested that political affiliation was an appropriate requirement for Cooper's job.

[7] The fact that a position historically is one of political patronage and that the appointment to the position itself is a patronage appointment is of no consequence. <u>See Umbehr</u>, 116 S. Ct. at 2350 (history of past patronage, even if a source of benefit to the plaintiff, does not render the practice constitutional).

10

A public employee's claim that an adverse employment decision was motivated by the exercise of the employee's First Amendment right of political affiliation is analyzed under the burden-shifting framework set forth in Mt. Healthy. See Umbehr, 116 S. Ct. at 2347. In order to prevail under Mt. Healthy, the plaintiff must first establish by a preponderance of the evidence: (1) that the plaintiff's conduct at issue was constitutionally protected, and (2) that it was a substantial or motivating factor in the employment decision. See id. Once this burden is met, the defendant may escape liability only by proving by a preponderance of the evidence that the same employment action would have been taken absent the protected conduct. See id.

Neither party contests the conclusion that Cooper's Democratic Party affiliation is conduct protected by the First Amendment. Cooper's deputy commissioner position is a nonpolicymaking and non-confidential governmental position. On these facts, political affiliation would not be required for effective service as a deputy commissioner in the Commissioner of Revenue's office. Therefore, Cooper's Democratic Party affiliation is constitutionally protected conduct. See Branti, 445 U.S. at 518.

Even though Cooper has established that he engaged in constitutionally protected conduct, he has failed to show that his political affiliation was a substantial or motivating factor in the Board's decision to terminate his health insurance and other benefits. First, the budget that included no funding for Cooper's benefits was approved by the Board by a unanimous vote. Obviously, if political affiliation motivated the decision to terminate Cooper's benefits, one would reasonably suspect that the Board's lone Democrat, Ray, would have voted to defeat the budget. Second, the Board's action was designed to eliminate the inequity of providing benefits to some employees designated by the Compensation Board as temporary and not to other employees designated as temporary, such as Cooper's co-worker, Cooney. Some employees designated by the Compensation Board as temporary were not receiving benefits, and Cooper, harnessed with that designation, was. Third, once Livesay informed the Board that Lee County was providing Edwards benefits, the Board moved swiftly to terminate Edwards' benefits that were funded by Lee County. The decision to terminate Edwards' benefits that were funded by Lee County raises a strong inference that Cooper's political affiliation was not a substantial or motivating factor in the Board's decision

11

to terminate Cooper's benefits. Indeed, at the time Livesay informed the Board that Lee County was providing Edwards benefits, each member of the Board stated that Lee County should discontinue Edwards' benefits. Finally, it appears that Cooper was not eligible for the benefits he was receiving. With regard to group life insurance and retirement system benefits, temporary employees are not eligible for these benefits under Virginia law. See Va. Code Ann. §§ 51.1-132 and 51.1-502. With regard to health insurance benefits, the Adoption Agreement provides that temporary employees are not eligible for health insurance benefits and permanent employees working thirty-five hours or more per week are eligible.

Cooper makes much of the fact that Edwards' health insurance benefits were reinstated. However, Cooper is not similarly situated to Edwards. Cooper was designated by the Compensation Board as a temporary employee; Edwards was designated by the Compensation Board as a permanent employee. Under state law, each county is required to provide, among other things, health insurance to constitutional officers and their employees on the same basis as it provides benefits to its own employees. See Va. Code Ann. § 15.2-1517. In this case, Lee County was providing health benefits to Cooper even though it was not providing health benefits for other employees designated by the Compensation Board as temporary. The fact that Edwards' health insurance benefits were reinstated does not suggest that Cooper's benefits were terminated because of his political affiliation, but rather, it suggests that Lee County was attempting to provide health insurance benefits to all employees designated by the Compensation Board as permanent.

In summary, Lee County was providing Cooper benefits while other employees designated by the Compensation Board as temporary were not receiving those same benefits. To cure this inequity, the Board eliminated the funding of benefits to all employees designated by the Compensation Board as temporary. We see nothing sinister in the Board's actions. Because the evidence presented at trial was insufficient to allow a reasonable jury to render a verdict in Cooper's favor, the judgment of the district court must be reversed. See Price, 93 F.3d at 1249-50.

REVERSED

12

WILKINSON, Chief Judge, dissenting:

I would affirm the judgment of the district court for the reasons set forth in its respective opinions (Joint Appendix at 623-28; 633-47).

13