Affirmed in part, reversed in part, and remanded by published opinion. Judge WILLIAMS wrote the opinion, in which Judge LUTTIG joined. Judge MICHAEL wrote an opinion concurring in part and dissenting in part.
OPINION
WILLIAMS, Circuit Judge.
In this case, several individuals[1] (collectively Appellants) seek recovery against the Secretary of Labor (the Government) under the Privacy Act, 5 U.S.C.A. § 552 et seq. (West 1996 & Supp.2000), and the United States Constitution for the disclosure of their Social Security numbers (SSNs) incident to the adjudication of their black lung compensation claims. They also seek certification of a class of persons whose SSNs were so disclosed. Because we hold that a Privacy Act plaintiff only may recover money damages upon a showing of actual damages, and because Appellant Buck Doe has not made such a showing, we reverse the district court’s grant of summary judgment in favor of Buck Doe and hold that the Government was entitled to summary judgment in its favor as to Buck Doe’s claim. We affirm the district court’s grant of summary judgment in the Government’s favor with regard to each of the other Appellants, because no Appellant other than Buck Doe could show any adverse effect stemming from a violation of the Act. We further affirm the district court’s denial of leave for Appellants to *175 amend their complaints and submit additional damages evidence. Additionally, because it is clear that Appellants’ claims are not typical of the claims of the putative class, we affirm the district court’s denial of class certification.
I.
The Department of Labor’s Office of Workers’ Compensation Programs (OWCP) and its Division of Coal Mine Workers’ Compensation are charged by Congress with the task of adjudicating black lung compensation claims. These offices retain the files of over one million coal miners who have filed for black lung benefits. To facilitate the processing of claims, OWCP assigned to each black lung claim a unique identifier called an “OWCP number” and used this number to identify the claim throughout the benefits adjudication process. (J.A. at 107, 109-10.) When a coal miner applied for benefits, he was asked to provide his SSN voluntarily and was informed that the number may be used to facilitate determination of benefits eligibility. Prior to the entry of a consent agreement in this case, if a black lung benefits applicant provided his SSN, OWCP used the SSN as the “OWCP number” for identification of the miner’s claim. Further, certain administrative law judges (ALJs) sent out a form of “multi-cap-tioned” hearing notice, listing in a single document the hearing dates for a number of different miners’ claims. (J.A. at 131.) In this way, the SSNs of numerous benefits applicants were (1) disclosed to other applicants, their employers, and counsel, and (2) frequently included in publicly released ALJ and Benefits Review Board decisions that, in turn, were published in benefits decision reporters and made available in computerized legal research databases. Appellants are black lung benefits claimants whose SSNs were disclosed in this manner, and they allege in their complaints that the disclosure of their SSNs caused them emotional distress. Buck Doe and five other Appellants, all suing under pseudonyms, brought this Privacy Act case by filing separate complaints in the district court. Although several additional persons moved to intervene as plaintiffs in this case, the docket sheet indicates that the district court granted leave to intervene only to one. of these persons, Tays Doe. (J.A. at 5.) On February 20, 1997, Appellants and the Government consented 'to the district court’s entry of a stipulated order prohibiting the Government from disclosing the SSN of any black lung claimant by including his SSN on multi-captioned hearing notices disseminated to persons not associated with the claimant’s claim. Appellants then filed a motion seeking certification of a class comprising “all claimants'for Black Lung Benefits since the passage of the Privacy Act.” (J.A. at 81.) Both the Government and Appellants moved for summary judgment.
The district court consolidated the seven individual actions and appointed a magistrate judge, pursuant to 28 U.S.C.A. § 636(b)(1)(b), to prepare a Report and Recommendation regarding the summary judgment motions and the motion for class certification. After holding several hearings, the magistrate judge recommended denying summary judgment for Appellants and granting summary judgment for the Government on all claims other than Buck Doe’s. Appellants, viewing the basis for the magistrate judge’s recommendation as a defect in their pleadings, then moved to file amended complaints alleging emotional distress with greater particularity than was the case in their original complaints, and to file affidavits substantiating their emotional distress claims. The magistrate judge recommended denial of the motion, finding it to be out of time and further concluding that the damages deficiencies in *176 Appellants’ eases were failures of proof, not pleading. Subsequently, the district court adopted the magistrate judge’s recommendations that the motion to file amended complaints and supplemental affidavits be denied, that class certification be denied, and that the Government be granted summary judgment on the claims of all Appellants except for Buck Doe. The district court rejected the magistrate judge’s recommendation to deny Buck Doe’s motion for summary judgment, however, and entered summary judgment awarding Buck Doe $1,000 in statutory damages. The district court held that “actual damages” must be proven to obtain the Privacy Act’s $1,000 in statutory damages. Because the district court found that the primary element of damage in privacy cases is ordinarily emotional distress, however, the district court held that proven emotional distress constitutes “actual damages” sufficient to permit recovery of the $1,000 statutory minimum damages amount. The district court held that Buck Doe produced sufficient evidence of emotional distress to justify summary judgment in his favor in the amount of the $1,000 statutory damages award. The district court also found that Appellants had substantially prevailed and were entitled to attorney’s fees but did not award a specific amount of attorney’s fees, reserving judgment on this issue pending the presentation of a petition for attorney’s fees.
Both Appellants and the Government timely appealed, raising a number of challenges to the district court’s decision. On appeal, Appellants argue that “actual damages” are not required for recovery of the $1,000 statutory damage amount and that in the alternative, the district court correctly held that emotional distress counts as “actual damages.” The Government argues, on the other hand, that “actual damages” are required, that such damages encompass only out-of-pocket or pecuniary harm, rather than non-pecuniary emotional distress, and that even if non-pecuniary emotional distress constitutes compensable “actual damages,” no Appellant produced adequate evidence of such emotional distress to survive summary judgment.
The district court’s grant of summary judgment is reviewed de novo. Providence Square Assoc. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir.2000) (stating that a district court’s grant of summary judgment is reviewed de novo). After examining the text of the Privacy Act, we will first address the question of whether “actual damages” are a precondition to recovery of statutory minimum damages under the Act. We will then turn to the issues of whether sufficient evidence of “actual damages” to survive summary judgment was presented, the propriety of the district court’s denial of Appellants’ motion to amend the pleadings and offer supplemental evidence, the district court’s denial of class certification, and the district court’s rejection of Appellants’ claims under the United States Constitution.
II.
The relevant provision of the Privacy Act provides that:
(4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
(A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
*177 (B) the costs of the action together with reasonable attorney fees as determined by the court.
5 U.S.C. § 552a(g)(4).
The question we must decide is whether a person must suffer “actual damages” in order to be considered “a person entitled to recovery” within the meaning of section 552a(g)(4)(A), and therefore entitled to the statutory minimum of $1,000 under that section. We hold that a person must sustain actual damages to be entitled to the statutory minimum damages award. We find this interpretation ultimately persuasive for several reasons, perhaps no one of which alone would be dispositive, but the aggregate of which are convincing.
First, and most importantly, the operative phrase “a person entitled to recovery” appears in subparagraph (A), the sole and entire purpose of which is to limit the liability of the United States to actual damages sustained. The legislative placement of the phrase in this subparagraph— indeed, within the very same sentence as that limiting Governmental liability to actual damages—almost itself confirms, as a matter of statutory interpretation, that the referenced “person entitled to recovery” is one who has suffered actual damages. In effect, through this placement, Congress has defined “recovery” (albeit indirectly) by its express limitation of the Government’s liability to actual damages sustained: The authorized “recovery” (apart from costs and attorney fees, which are separately provided for) can only exceed the amount of actual damages where actual damages are greater than $0 but less than $1,000. Thus the provision does not create “statutory damages,” but only provides for a “statutory minimum” to actual damages.
It would be odd, to say the least, for Congress to have limited the liability of the United States to actual damages and, in the very same sentence, to have authorized, for a plaintiff to whom the United States is found liable, recovery not merely beyond actual damages, but in the complete absence of such damages. That Congress would have done so in as circuitous and oblique a fashion as the dissent suggests borders on the inconceivable. By contrast, reading the section to require actual damages gives effect to the eminently reasonable (and generally to be expected) presumption that the legislature correlated the plaintiffs recovery entitlement with the defendant’s liability by limiting the plaintiffs recovery to actual damages and by providing, by way of incentive to suit, for at least a minimum recovery even where actual damages are minimal.
Second, and relatedly, we believe that the location of the phrase “a person entitled to recovery” within the very same subparagraph and sentence as the limitation of the Government’s liability to actual damages sustained, without any other explicit reference, establishes as a grammatical matter, as well, that the reference of this phrase is to one who is able to show actual damages. That is, having just defined the recovery that will be permitted against the United States as that of actual damages, it would torture all grammar to conclude that the phrase “a-person entitled to recovery” references anyone other than one who has sustained actual damages.
Third, that the two clauses of (g)(4)(A) are separated by the conjunction “but,” serves to reinforce the conclusion that the second clause (“in no case shall a person entitled to recovery receive less than the sum of $1,000”) adds a qualification with respect to the class of plaintiffs defined by the first (those who have suffered actual damages)'—namely, that in no event shall such person recover less than $1,000.
*178 And, though not necessary to our conclusion, the absence of clear language authorizing an award without a showing of actual damages, where such language is readily available and to be expected, only further underscores the correctness of a construction that proof of actual damages is required for recovery of the statutory $1,000 minimum. As the dissent acknowledges, Congress, with ease, could have phrased the liability provision to provide unequivocally for a statutory minimum recovery, even for those who are unable to prove actual damages.[2] For instance, section 4 and subsection (A) could have been phrased in the following, or similar, terms: “the United States shall be liable to the individual in an amount equal to the sum of (A) which-ever is greater: actual damages sustained by the individual as a result of the refusal or failure, or $1,000.” That instead of such an unambiguous directive, Congress, in this simple, straightforward statute expressly providing for the recovery of actual damages against the United States, provided sub silentio for an award to one who has not even suffered actual damages at all, strains the powers of reasonable inference.
The dissent’s primary point is, as it frankly acknowledges, an implicit one. Post, at 188-89. And as such, we would be constrained to reject it in favor of the textual analysis that we undertake above.[3] We reject the dissent’s textual assertion that “recovery,” as used in § 552a(g)(4)(A), should be read to reference § 552a(g)(4)(A)’s provision for an award of costs and attorney’s fees, not only for the textual reasons recited, but also because the key phrase, “a person entitled to recovery,” appears in the statute prior to the provision for costs and attorney’s fees. *179 We do not believe that Congress would have invoked a terra whose definition is dependent upon a subsequent statutory provision. Furthermore, in the context of § 552a(g)(4)(A), which concerns itself with damages stemming from a violation of the Act rather than costs incurred in litigation, “recovery” is not plausibly read to reference litigation costs in the absence of any underlying compensable injury. We acknowledge that our interpretation of section 552a(g)(4)(A) to require proof of actual damages as a condition for receipt of the statutory minimum award is not strictly compelled by the statute’s language. We are convinced, however, that, for the aforesaid reasons, this construction is the most persuasive reading of the section. But even were the interpretive issue closer, the ambiguity would, in accordance with established principles of sovereign immunity, have to be resolved in favor of the interpretation we adopt today, because section 552a’s damages provision represents a limited waiver of sovereign immunity. As the dissent itself concedes, “[i]t is, of course, clear that [if the sovereign immunity canon applies,] we must accept the narrower of two equally convincing interpretations.” Post, at 195.[4]
It is axiomatic that limited waivers of the federal Government’s sovereign immunity must be “strictly construed ... in favor of the sovereign.” Lane v. Pena, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). A limited waiver of sovereign immunity must not be “enlarged beyond what the language requires.” United States v. Nordic Village, Inc., 503 U.S. 30, 33-34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (internal citation omitted); see also Lane, 518 U.S. at 192, 116 S.Ct. 2092. This principle of “strict construction” extends beyond the mere fact of waiver, to the “scope” of a waiver, which also must “be strictly construed ... in favor of the sovereign.” Lane, 518 U.S. at 192, 116 S.Ct. 2092.
Needless to say, determining whether or not subparagraph (A) allows plaintiffs to receive statutory damages without first proving actual damages is a question of the scope of damages available under the sub-paragraph. The narrower reading of the statute that we adopt herein, therefore, would have to prevail over the dissent’s by virtue of this stricter construction “in favor of the sovereign,” id., even were there more ambiguity in the statutory text.
III.
Having determined that the district court correctly ruled that proven “actual damages” are a precondition to recovery of § 552a(g)(4)(A)’s statutory minimum damages award, we now turn to the merits of the district court’s ruling that Buck Doe succeeded in proving “actual damages” and was entitled to summary judgment in the *180 amount of the Act’s $1,000 statutory damages award. The district court held that proven emotional distress constitutes “actual damages” under § 552a(g)(4)(A) and that Buck Doe introduced uncontroverted evidence of such damages, sufficient to entitle him to summary judgment. On appeal, Appellants defend this ruling, while the Government argues that Buck Doe failed to introduce sufficient evidence of compensable emotional distress and that, in the alternative, the term “actual damages” as used in the Act does not include damages for emotional distress.
An award of compensatory emotional distress damages requires evidence “establishing] that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a ... violation occurred supports an award of compensatory damages.”[5] Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir.1996). A plaintiffs own con-clusory allegations that he felt “embarrassed,” “degraded,” or “devastated,” and suffered a loss of self-esteem, will not suffice to create a disputed issue of material fact for the jury regarding the presence of compensable emotional distress. Id. at 1255; see also Brady v. Fort Bend County, 145 F.3d 691, 718-19 (5th Cir.1998) (in a § 1983 action, “vague and conclusory” testimony that a claimant was “highly upset,” could not “accept it mentally,” “didn’t feel like the same person,” or “spent more time on the couch” does not satisfy the specificity standard for compensable emotional distress). Where, on the other hand, a plaintiff can produce evidence that emotional distress caused chest pains and heart palpitations, leading to medical and psychological treatment which included a formal diagnosis of “major depressive disorder,” as well as necessitated prescription medication, it is clear that some amount of compensatory damages for emotional distress is warranted. Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir.2001).
 In determining whether sufficient evidence exists to support an award of more than nominal damages for emotional distress, we examine factors such as the need for medical, psychological, or psychiatric treatment, the presence of physical symptoms, loss of income, and impact on the plaintiffs conduct and lifestyle. Price, 93 F.3d at 1255. In Price, we held that failure to establish emotional distress with sufficient evidence will result in the award of only nominal damages.[6] Id. *181 Nominal damages, when available, are designed to vindicate legal rights “without proof of actual injury.” Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). An award of merely nominal damages means that a plaintiff has not shown “actual injury.” Thus, if Buck Doe’s emotional distress evidence would entitle him only to nominal damages under the Price framework, he has shown no “actual injury,” in other words, no “actual damages sustained.”
Buck Doe’s evidence of emotional distress in this case falls far below the level which our precedent demands before the issue of compensatory damages for emotional distress may be submitted to the finder of fact. He testified that he was “greatly concerned and worried” about the disclosure of his SSN; that he felt his privacy had been violated in “words he cannot describe”; that he felt the consequences of the disclosure of his SSN could be “devastating” for himself and his wife, and that the disclosure of his SSN had “torn [him] all to pieces,” in a manner that “no amount of money” could ever compensate. (J.A. at 55-56). Compare Price, 93 F.3d at 1254-56 (holding that statements that one felt “embarrassed,” “degraded,” “devastated,” etc., do not create a disputed issue of fact as to entitlement to compensatory damages for emotional distress); Brady, 145 F.3d at 718-20 (holding that there was no issue of fact as to entitlement to more than nominal damages for emotional distress based upon testimony that claimant was “highly upset,” “spent more time on the couch,” etc.). Buck Doe did not produce any evidence of tangible consequences stemming from his alleged angst over the disclosure of his SSN. He claimed no medical or psychological treatment, no purchase of medications (prescription or over-the-counter), no impact on his behavior, and no physical consequences. Further, no evidence of any kind corroborates the conclusory allegations in Buck Doe’s affidavit. Under these circumstances, we need not reach the issue of whether the term “actual damages” as used in the Act encompasses damages for non-pecuniary emotional distress because,’ regardless of the disposition of that issue, Buck Doe’s claims fail for lack of evidentiary support.[7] *182 In turn, because we have concluded that “actual damages” are a prerequisite to the recovery of statutory minimum damages, and because Buck Doe utterly failed to produce evidence sufficient to permit a rational trier of fact to conclude that he suffered any “actual damages,” the district court’s entry of summary judgment in Buck Doe’s favor as to his entitlement to a statutory “actual damages” award must be reversed, and we must remand with instructions to enter summary judgment in favor of the Government on his claim.
IV.
We next address Appellants’ challenge to the district court’s refusal to allow them to amend their complaints or to proffer supplemental evidence supporting their emotional distress claims. After the magistrate judge recommended granting summary judgment for the Government, Appellants moved to amend their complaints and to file additional affidavits in support of their damages case. The magistrate judge recommended denying Appellants leave to amend their complaints and to submit additional damages evidence. The magistrate judge reasoned that the proffered amendments to the complaints were belated and that, without making a showing of cause for the failure to submit the evidence earlier, a party is not entitled to submit additional evidence to resist summary judgment after a motion has been decided. The magistrate judge further reasoned that Appellants were on notice of the possible need to prove actual damáges prior to the issuance of the recommendation to grant summary judgment. The district court, after a de novo review, adopted the magistrate judge’s recommendation and denied Appellants’ motion.
Appellants argue that the district court abused its discretion in denying them leave to amend their pleadings to include more specific allegations of emotional damages because leave to amend pleadings should be granted liberally.[8] Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir.1987) (noting that the policy favoring the adjudication of cases on the merits requires that leave to amend be given liberally when “justice so requires”). We conclude that the denial of Appellants’ motion for leave to amend their complaints has no bearing on the outcome in this case because allegations in the pleadings would not suffice to survive summary judgment in any event. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (noting that a party resisting summary judgment “may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial”). Instead, the relevant issue is the refusal to accept new affidavits to buttress Appellants’ damages evidence.
*183 We review the district court’s refusal to accept Appellants’ supplemental affidavits on the issue of damages for abuse of discretion. See United States v. Howell, 231 F.3d 615, 622-23 (9th Cir.2000) (reviewing for abuse of discretion a district court’s refusal to permit the production of new evidence following a magistrate judge’s recommendation regarding a dispositive motion).[9]
Appellants claim that they were not on notice regarding the need to produce evidence of actual damages to resist summary judgment and that this alleged lack of notice supports a finding that the district court abused its discretion in refusing to allow the filing of supplemental damages evidence. This contention is not well-founded because the Government, in a memorandum in support of its motion for summary judgment filed over a year prior to the magistrate judge’s recommendation, argued that the Sixth Circuit’s “actual damages” standard, as articulated in Hudson v. Reno, 130 F.3d 1193, 1207 (6th Cir.1997), should govern and pointed to the absence of evidence sufficient to create a factual dispute as to actual damages under the Hudson standard. (Mem. in Support of Defendant’s Supplemental Motion for Summary Judgment, at 21-24.) Having chosen not to present evidence of “actual damages” prior to the magistrate judge’s recommendation, after the Government specifically argued that the governing law required such evidence, Appellants took a calculated risk that they would face an evidentiary insufficiency if they lost their legal argument regarding the need to prove “actual damages.” We thus conclude that the district court did not abuse its discretion in declining to permit the presentation of new evidence • on the ground that Appellants did not show cause for their failure to present it earlier.
V.
Appellants next challenge the district court’s denial of their motion for class certification. A decision of a district court granting or denying a motion for class certification is reviewed on appeal for abuse of discretion, but the district court must exercise its discretion within the confines of Federal Rule of Civil Procedure 23. Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir.2001). The district court denied Appellants’ motion for class certification on the ground that emotional damages require too much individualized proof to render the named representatives’ claims typical of those of the class. The magistrate judge, in recommending denial of class certification, reasoned that emotional damages are likely to be so variable and fact-specific that damages issues overwhelm liability, precluding class certifica *184 tion. See, e.g., Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 342-44 (4th Cir.1998) (holding that the individualized nature of damages can, under some circumstances, destroy typicality).
Appellants argue that the district court’s denial of class certification was erroneous because, in their belated amendments to their complaints, they decided to pursue only the $1,000 minimum statutory damages, so that damages are in fact identical for all class members. If their amendments had been accepted, however, Appellants still would have faced grave typicality problems for two reasons. First, an adverse effect is a core liability requirement for a Privacy Act suit. The Act allows a private suit against an agency when the agency “fails to comply with any ... provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual ....” § 552a(g)(l)(D) (West 1996 & Supp.2001). And second, as we have demonstrated in Part II supra, the Act requires proof of actual damages to obtain a damage award. No Appellant in this case, other than Buck Doe, could even show an adverse effect, and Buck Doe was unable to demonstrate actual damages. Assuming that the claims of unnamed class members include a number of claims for which there is some evidence of adverse effect and actual damages, the putative class representatives have not suffered “injuries] similar to the injuries suffered by the other class members.” McClain v. South Carolina Nat’l Bank, 105 F.3d 898, 903 (4th Cir.1997). Additionally, the Government correctly notes that the proposed class was drafted without regard to the two-year statute of limitations for Privacy Act claims, see 5 U.S.C.A. § 552a(g)(5), so that the overwhelming majority of claims included in the proposed class may be time-barred. Brief of Appellee at 41. This, too, undermines typicality because the claims of the named representatives would differ from those of unnamed class members with potentially time-barred claims. Accordingly, the district court did not abuse its discretion in declining to certify the proposed class.
VI.
Finally, Appellants challenge the district court’s rejection of their claim that the disclosure of their SSNs violated their right to privacy under the United States Constitution. The district court’s grant of summary judgment for the Government is reviewed de novo. Providence Square Assoc., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir.2000).
At the threshold, the Government argues that Appellants’ constitutional claims are moot. These claims are indeed moot because (1) the consent decree entered into by the Government prospectively enjoins all of the conduct challenged by Appellants and (2) no money damages are available because a Bivens action does not lie against either agencies or officials in their official capacity. See FDIC v. Meyer, 510 U.S. 471, 484-86, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (holding that a Bivens action is unavailable against agencies); Randall v. United States, 95 F.3d 339, 345 (4th Cir.1996) (“Any remedy under Bivens is against federal officials individually, not the federal government.”). Thus, no further effective relief can be given Appellants on their constitutional claims because they already have complete injunctive relief and no damages are available. We therefore refrain from addressing these claims on the merits.
VII.
Because the Privacy Act requires proof of “actual damages” for an award of statutory minimum damages and because Buck *185 Doe failed to provide sufficient evidence of actual damages to survive the Government’s summary judgment motion, we reverse the district court’s grant of summary judgment in Buck Doe’s favor and direct on remand that summary judgment be entered in the Government’s favor as to Buck Doe’s claims. Because no Appellant other than Buck Doe produced any evidence of an “adverse effect” under the Act, we affirm the district court’s grant of summary judgment in the Govermnent’s favor on the claims of all of the other Appellants. We affirm the district court’s denial of class certification, and we decline to address as moot Appellants’ constitutional claims.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. The Appellants are Tays Doe, Robert Doe, Buck Doe, Charles Doe, Joe Doe, Otis Doe, and Thomas Doe.

. We do not believe that the interpretation of § 552a(g)(4)(A) that we adopt undermines the purposes of the Privacy Act’s damages provision, as the dissent asserts. Post, at 197. The text of § 552a(g)(4) demonstrates that Congress rationally chose to augment damages awards for persons able to demonstrate some “actual damages” in order to encourage citizen enforcement of the Act while denying statutory damages to persons who cannot meet the "actual damages” standard, in order to serve a competing objective: preventing the imposition of potentially substantial liability for violations of the Act which cause no "actual damages” to anyone. The dissent’s general observation that "Congress creates statutory damages remedies because it wants to encourage civil enforcement suits,” post, at 198, does not establish that Congress meant, in light of competing considerations, to encourage such suits to the degree suggested by the dissent's approach. Furthermore, even assuming that recourse to legislative history is permissible here, the dissent can point to no legislative history addressing how Congress meant to balance these competing considerations in the context of the Act’s actual damages provision. Post, at 198 n. 12 (noting the paucity of legislative history surrounding § 552a(g)(4)(A)’s minimum damages remedy). Instead, the dissent relies on the legislative history of other, later-enacted statutes. It is counterintuitive, however, to believe that the purpose of a later Congress comprised of different members and addressing different problems can be imputed back in time to the Congress that enacted the Privacy Act. See Sigmon Coal Co. v. Apfel, 226 F.3d 291, 308 n. 7 (4th Cir.2001) (labeling as "dubious” any "attempt at determining whether the apparent intent of one Congress in enacting a statute is at all useful for discovering the intent of another Congress in enacting a separate, unrelated statute"), aff'd, Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002).

. Nor has any court examined closely the question we consider today, and none has analyzed the text of the statute at all. Those courts that have come to the same conclusion as the dissent rely exclusively on ipse dixit, see Wilborn v. HHS, 49 F.3d 597, 603 (9th Cir.1995); Parks v. IRS, 618 F.2d 677, 682-83 (10th Cir.1980); Fitzpatrick v. IRS, 665 F.2d 327, 331 (11th Cir.1982); Waters v. Thornburgh, 888 F.2d 870, 872 (D.C.Cir.1989), entitling them to no persuasive force whatsoever.

. The decisions from our sister circuits likewise support the conclusion that the scope of the Privacy Act's damages provision is to be interpreted in accordance with this principle of strict construction. See Hudson v. Reno, 130 F.3d 1193, 1207 n. 11 (6th Cir.1997) (holding that the doctrine that "courts must strictly construe waivers of immunity” requires that the Privacy Act damages provision, "when it is being applied against the Government ... must be narrowly interpreted” on the question of whether § 552a(g)(4)(A)'s "actual damages” include damages for emotional distress, loss of reputation, embarrassment, or other non-quantifiable injuries), overruled in part on other grounds hy Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001); Tomasello v. Rubin, 167 F.3d 612, 618 (D.C.Cir.1999) (finding that § 552a(g)(4) is governed by the strict construction mandated by Nordic Village on the question of whether related, contemporaneous disclosures must be treated as a single disclosure for purposes of the Act's $1,000 statutory damages amount).

. Price was decided in the context of claims arising under 42 U.S.C.A. § 1983, but we see no reason why the Privacy Act does not require at least the same particularized showing of emotional distress which is a prerequisite to recovery of emotional distress damages for the violation of the most precious of rights, those secured by the United States Constitution. See, e.g., Southern Express Co. v. Byers, 240 U.S. 612, 615, 36 S.Ct. 410, 60 L.Ed. 825 (1916) (noting, in the context of a common-law cause of action, "the elementary principle that mere pain and anxiety are too vague for legal redress") (internal quotation marks omitted).

. It bears note that in Price, we addressed the showing necessary to justify an award of more than nominal damages for emotional distress, not the showing necessary to justify an award that is above some relatively high threshold of "substantiality,” as the dissent appears to suggest. Post, at 200 n. 15; Price, 93 F.3d at 1256 (awarding nominal damages to plaintiffs because they could not "prove emotional distress warranting compensatory damages"). Price is thus concerned with the level of evidence needed to support a conclusion that a plaintiff's emotional injuries were more than de minimis or ephemeral, in other words, adequate to warrant more than a nominal damage award for the technical invasion of a plaintiff's rights. Id. at 1256. Thus, the Price framework is not inappropriately rigorous in the context of the Privacy Act’s "actual *181 damages” requirement. To the contrary, as the dissent notes, the Act’s "actual damages" requirement is distinct from and more rigorous than the requirement of an "adverse effect.” Post, at 186 n. 2, 188. Thus, claims of emotional injury, to satisfy the "actual damages” requirement, must meet a threshold higher than the "injury in fact" threshold applicable to the "adverse effect” inquiry. It follows that a showing of "very minor emotional distress," post at 199, which, one supposes, would have to include any amount of momentary annoyance, angst, or irritation that might support a nominal damages award, cannot possibly suffice to establish “actual damages" under the Act. The consequent possibility that some "plaintiffs who suffer very minor harms will go uncompensated," post, at 203, is the price of the "actual damages” provision's gatekeeping function of avoiding tremendous overcompensation of plaintiffs whose damages evidence fails to establish any meaningful injury at all.

. The emotional distress allegations of the other Appellants are even less well-supported than Buck Doe's allegations and likewise fail. For example, Robert Doe testified that "nothing bad happened to [him] but' [he] guess[ed] it could.” (J.A. at 151.) The claims of plaintiffs other than Buck Doe are so totally lacking in any evidence of injury of any kind that, as the dissent concedes, they fail the Act’s threshold "adverse effect” requirement, which is a threshold statutory standing principle, distinct from and less demanding than the "actual damages" requirement, that requires some negative consequence sufficient to constitute "injury in fact,” separate from and caused by a violation of the Act. See Quinn v. Stone, 978 F.2d 126, 135 n. 15 (3d Cir.1992) (noting the distinction between "actual damages” and "adverse effect”).

. Appellants also argue that the magistrate judge behaved improperly when, after the Government by letter stated that it did not intend to object to the amended pleadings and new material, the magistrate judge allegedly, in a telephone conference with counsel, urged the Government to change its position. The Government denies that the substance of this telephone conference was as Appellants allege. The Government clarifies that it did not actually consent to the amendment, which under Federal Rule of Civil Procedure 15(a), would have required the court to grant the amendment, but simply stated that it did not intend to object to the amendment. We hold that the district court did not abuse its discretion in recognizing the Government’s decision, prior to the disposition of the motion to amend, to withdraw whatever consent had been conveyed by its earlier letter. Further, assuming that the magistrate judge stated to the Government that the pending motion to amend could, if granted, lead to a finding of liability, nothing suggests that the magistrate judge coerced the Government into changing its position.

. Without adequate justification for the failure to present the evidence in question earlier, a district court may ignore belatedly tendered evidence offered in opposition to summary judgment after the court has ruled on a summary judgment motion. Cray Communications, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 395 (4th Cir.1994); cf. Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir.1995) (noting that a party seeking an extension of time to respond to a summary judgment motion must timely file affidavits specifying which aspects of discovery require more time to complete). While the new evidence was proffered between the magistrate judge's recommendation and the district court's adoption of the recommendation, Appellants do not argue that this fact is of any significance. The relevant statute states that a district court reviewing a magistrate judge's recommendation must review de novo disputed portions of a magistrate's report and "may also receive further evidence.” 28 U.S.C.A. § 636(b)(1) (West 1993) (emphasis added). Because Congress used the permissive term ''may'' in connection with the receipt of additional evidence, the question of whether to consider such evidence rests within the sound discretion of the district court.