Robert NOEL, Magnum Transport, LLC, and Frederick Yates, on behalf of themselves and others similarly situated, Plaintiffs,

v.

HUDD DISTRIBUTION SERVICES, INC. and Maersk Distribution Services, Inc., Defendants.

Civil Action No. 2:09–cv–1802–RMG.

United States District Court, D. South Carolina, Charleston Division.

March 2, 2011.

Charles W. Whetstone, Jr., Cheryl F. Perkins, Thad Lee Myers, Whetstone Myers Perkins and Young, Columbia, SC, Douglas Jennings, Jr., Bennettsville, SC, Glenn Walters, Orangeburg, SC, for Plaintiffs.

Gordon D. Schreck, Buist Moore Smythe and McGee, Charleston, SC, Adam Carl Smedstad, Scopelitis Garvin Light and Hanson, Chicago, IL, Braden Kenneth Core, Scopelitis Garvin Light Hanson and Feary, Indianapolis, IN, Rachelle Marie Barstow, Maersk Inc., Madison, NJ, for Defendants.

## ORDER

RICHARD MARK GERGEL, District Judge.

This action is a putative class action brought in this Court's federal question jurisdiction for alleged violations of a federal statutory scheme governing trucking leases accompanied with several common law claims arising in connection with the same leases. Before the Court is the Plaintiffs' motion for class certification. (Dkt. No. 48). Plaintiffs seek class certification on each of the counts alleged in their Amended Complaint. As detailed herein, after a rigorous analysis of the Rule 23 factors, this Court denies Plaintiffs' motion for class certification. The Court finds that the named Plaintiffs'—Mr. Noel and Mr. Yates (and his company)—are not suited to be class representatives as they each have divergent interests which may harm the rights of the other potential, unnamed class members due to their failure to establish their claims are typical of other putative class members.

### Background

Plaintiffs claim that federal law prohibits companies that lease trucking equipment from owner-operators from passing on charges (charge-backs) to the truckers or trucking entities that utilize the equipment for shipping goods without disclosing the charges in the leasing contracts in compliance with the mandates of the federal law. Here, the Plaintiffs claim that certain insurance premiums and cell phone charges were not listed or were misrepresented in the leases and that as a result, the Defendants profited from the increased charges. In other words, Plaintiffs claim that because the charges were not disclosed/misrepresented their opportunity to look for better options in the market place was taken away and they have been damaged—their "benefit of the bargain" was taken away. (Dkt. No. 59 at ¶ 118; Dkt. No. 48–3 at p. 9).

Hudd/MDSI are motor carrier providers that transport property in interstate commerce by leasing equipment from independent contractors known as owner-operators. The named Plaintiffs are owner-operators. Simply put, the Defendants ship goods on the roads by using the assistance of truckers and trucking companies like Plaintiffs. As a result of their status as a motor carrier, Defendants are regulated by a fixed statutory scheme that governs their relationships with owner-operators. The named owner-operators (and in Mr. Noel's case his company Magnum) entered into a series of leases with Defendants over the course of many years. Federal law requires that the leases contain certain disclosures related to charges for insurance and any other incidental charges (here cell phones). The Plaintiffs claim the leases were deceptive and did not comport with the federal law and failed to disclose the true nature of the insurance and cell phone charges (i.e. the actual cost of the items to Defendants) which enabled Defendants to allegedly profit handsomely. Plaintiffs seek class certification on each of the causes of action contained in their amended complaint arising out of the alleged wrongdoing in connection with the leasing agreements.

The Plaintiffs have pled eight causes of action in their amended complaint. (Dkt. No. 59). The causes of action are summarized as: 1) declaratory judgment action seeking declarations from the court that defendants have violated the Truth–in–Leasing Act in multiple respects; 2) damages for Truth–in–Leasing Act violations (insurance

charge-backs); 3) damages for Truth–in–Leasing violations (cell phone charge-backs); 4) injunctive relief; 5) breach of contract (insurance-charge backs); 6) breach of contract (cell phone charge-backs); 7) breach of the covenant of good faith and fair dealing; and 8) misrepresentation. The Plaintiffs seek certification of a nationwide class for each of the above causes of action.

On the above eight causes of action, the Plaintiffs seek to certify a nationwide class with the following class definitions:

> **Insurance Charge-back Class:** Owner-operators of motor vehicle equipment who provided equipment and driving services for the movement of freight pursuant to lease agreements with Hudd/MDSI and who, within the four years prior to the filing of this action through December 31, 2007 elected to purchase public liability, trailer and/or cargo coverage through Hudd MDSI and who were charged-back for the coverage.

> **Cell–Phone Charge-back Class:** Owner-operators of motor vehicle equipment who provided equipment and driving services for the movement of freight pursuant to lease agreements with Hudd/MDSI and who, within the four years prior to the filing of this action, elected to procure cell phone services through Hudd/MDSI, with propose subclasses (1) owner-operators charged-back for cell phone usage under pre–2008 contracts who did not sign an Appendix C accurately disclosing the rate for cell-phone charge-backs and the method of calculation of the charge-backs; (2) owner-operators charged-back for cell phone usage under 2007–2008 leases; (3) owner operators charged-back for cell phone usage after execution of the December 2009 form of lease agreement.

(Dkt. No. 59 at p. 29).

Plaintiffs allege that each named plaintiff in this action entered into written lease agreements with Hudd/MDSI. For a portion of the relevant time, the Hudd/MDSI lease agreements required owner-operators procure and maintain the federally mandated public liability insurance coverage and "arrange for Carrier to be named as additional insured under such policy." As one option, the owner-operators could elect to purchase the required coverage through Hudd/MDSI. Hudd/MDSI would then "obtain such coverage on Contractor's behalf and deduct the ***total cost thereof....***" (Dkt. No. 48) (emphasis added). If the owner-operator agreed "to acquire Public Liability and Property Damage insurance for its operations by being added into the risk pool operated by Carrier.... Contractor agree[d] to pay the ***costs arising from his inclusion in said risk pool by settlement deduction on a weekly basis in the manner set forth in this Appendix.***" (Dkt. No. 48, Exhibit 1 at MDSI00009). The Plaintiff alleges that based on the language in the lease that Hudd/MDSI not only stated that an owner-operator would only be charged the "costs of his inclusion" under the public liability coverage, but characterized the Hudd/MDSI costs as premiums collected from Hudd/MDSI by the insurer for the coverage.

Plaintiffs claim that during the class period Hudd/MDSI collected from owner-operators amounts greatly exceeding what it paid out in premiums. Plaintiffs allege the collections exceeded Hudd/MDSI's payments for premiums on all types of coverages, including massive umbrella premiums allocated to Hudd/MDSI, as well as its payments for loss reserves. Thus, the Complaint claims that Plaintiffs and other similarly situated class members were denied the benefit of the bargain by Hudd/MDSI's excessive charge-backs. Plaintiffs argue that the leases promised premiums to owner-operators based solely on the cost to Hudd/MDSI for including them under the Hudd/MDSI primary liability policy and cargo policies identified in the lease agreement and elected for purchase by the owner-operators.

Another alleged profit area for Hudd/MDSI was its cell phone program. Hudd/MDSI required owner-operators have cell phones compatible with its communications program and offered owner-operators the use of Nextel cell phones that operated similarly to 2–way radios. (Dkt. No. 48). Lease agreements used up to December 31, 2007 included an Appendix that was supposed to be the Incidental Charges disclosure. However, Plaintiffs claim that in many cases the

Appendix was either not filled in at all or filled in incompletely. Beginning January 1, 2008, a new lease agreement was and this new contract contains an itemized listing of all charge-backs to compensation, together with the method of calculating the charge-back. Plaintiffs claim that this new lease agreement, however, omits any mention of cell phone charges at all. At the end of 2009 Hudd/MDSI again revised its lease and added to the itemized charge-backs list cell phone service. However, the method of calculation is only listed as "amount to be determined by market rates for individual terminals." Plaintiffs state that the documents show that the cellular telephone charge-backs were never itemized on any Noel, Yates or Magnum Transport lease or signed appendix made a part of a lease and Plaintiffs claim that further discovery will show such lack of disclosure was routine. Plaintiffs further state that from January 1, 2008 through December 2009, the Hudd/MDSI leases and appendices, rather than clearly specifying cell phone charges as charge-back items, were all completely silent on cell phone charge-backs. Plaintiffs allege that the basis for calculation of the charges, and the fact that the charges incorporated a huge markup and/or administrative fees, was never disclosed and still is not.

### Law/Analysis

### I. Class Certification Generally

Fed.R.Civ.P. 23 sets the requirements for class certification. First, Rule 23(a) provides that certification is proper only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). "[T]he final three requirements of Rule 23(a) *'tend to merge,'* [so that] commonality and typicality '[serve] as guideposts for determining whether ... maintenance of a class action is economical

and whether the named plaintiffs claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir.2009) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir.1998)) (emphasis added).

Once Rule 23(a)'s requirements of numerosity, commonality, typicality, and representational adequacy are met, the proposed class must still satisfy one of three additional requirements for certification under Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(3)[1], thus they are required to show that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R.Civ.P. 23(b)(3). The predominance requirement under Rule 23(b)(3) "is similar to but 'more stringent' than the commonality requirement of Rule 23(a)." *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir.2006) (quoting *Lienhart v. Dryvit Sys.*, 255 F.3d 138, 146 n. 4 (4th Cir.2001)).

The party seeking class certification bears the burden of establishing all Rule 23 requirements. *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir.1989). If one of the requirements necessary for class certification is not met, the Plaintiffs' effort to certify a class must fail. *See Clark v. Experian Information Solutions, Inc.*, 2001 WL 1946329 (D.S.C.2001) (J. Seymour) (recognizing that the failure to meet any one of the requirements of Rule 23 precludes certification of a class and denying class certification).

Moreover, "[a] district court has broad discretion in deciding whether to certify a class." *Thorn*, 445 F.3d at 317 (quoting *Lienhart*, 255 F.3d at 146). However, when determining whether the requirements of Rule 23 have been met, this Court must not merely rely on the allegations found in the plaintiff's complaint, but must "tak[e] a close

---

1. Plaintiffs also seek certification under Rule 23(b)(2) on their equitable claims which are ad- dressed below.

look at relevant matters," conduct "a rigorous analysis of such matters," and make "findings that the requirements of Rule 23 have been satisfied." *Gariety v. Grant Thornton,* 368 F.3d 356, 365 (4th Cir.2004) (citations omitted). Plaintiffs must demonstrate how they intend to prove their claims on a classwide basis so that the Court can "envision the form trial on those issues would take." *Chisolm v. TranSouth Fin. Corp.,* 194 F.R.D. 538, 544 (E.D.Va.2000) (internal citations and quotations omitted). State differently, the Court must conduct a thoughtful examination that envisions how a class action would unfold—a "mental dress rehearsal of anticipated proof, the jury instructions, the verdict sheet, and the burdens imposed on the jury." *Lloyd v. GMC,* 266 F.R.D. 98, 105 (D.Md.2010).

While a Rule 23 certification analysis should not "include consideration of whether the proposed class is likely to prevail ultimately on the merits," the Fourth Circuit, quoting the United States Supreme Court, has made clear that "sometimes it may be necessary for the [district] court to probe behind the pleadings before coming to rest on the certification question." *Id.* (quoting *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Therefore, "[t]he factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits." *Id.* at 366.

## II. Rule 23's Requirements as Considered in this Action

### A. Typicality

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality requires that the claims of the named class representative be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Lienhart v. Dryvit Sys. Inc.,* 255 F.3d at 146 (citing *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. at 156, 102 S.Ct. 2364). Additionally, "[t]he typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir.1998) (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 341 (7th Cir.1997)).

The Fourth Circuit has held that, in analyzing Rule 23(a)(3)'s typicality requirement, courts must identify a "cognizable injury" held by the named plaintiffs "similar to the injuries suffered by the other class members." *McClain v. South Carolina Nat'l Bank,* 105 F.3d 898, 903 (4th Cir.1997) (affirming the district court's denial of certification where the plaintiffs' claims were "atypical from the claims of the rest of the class" because the plaintiffs had no shown that they suffered similar damages); *see also Doe v. Chao,* 306 F.3d 170, 183–84 (4th Cir.2002) (holding class representatives' inability to prove damages properly precluded finding of typicality); *Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331, 342–44 (4th Cir.1998) (holding that individualized damages will preclude typicality where a fact-specific inquiry is necessary).

■ In this matter, this Court finds that the Plaintiffs have not shown that the typicality requirement is satisfied because Plaintiffs do not seem to have sustained any cognizable injury based on their deposition testimony included in the Record before this Court. Specifically, the two named Plaintiffs have failed to demonstrate that their claims are similar to each other, much less that their claims are typical of those of the absent class members. For example, Plaintiffs differ on whether they read and understood the lease agreements and addendums they entered into with MDSI. (*Compare* Dkt. No. 51–4—Noel Dep. at 59:10–11, 102:22–23, 103:11–12, *with* Dkt. No. 51–5—Yates Dep. at 44:2–5, 68:13–16, 88:4–5, 98:21–25). Yates stated that he read portions of the lease agreements but that he did not read the insurance-related appendix. (*Id.*). Noel did read his leases and knew that Defendants were authorized to make certain insurance-related deductions from his compensation and how the number was calculated. (Dkt. No. 51–4—

Noel Dep. at 103:21–23, 106:13–15). However, Noel testified that he did not care whether Defendants charged him more for insurance than it paid for the coverage. (*Id.* at 124:1–5). Neither of the Plaintiffs were aware if other absent class members may have read their leases.

Moreover, the named Plaintiffs also disagree about whether it mattered that MDSI might have paid less than the amounts it passed-through to them for certain deductions. (*Compare* Dkt. No. 51–4—Noel Dep. at 124:1–5, *with* Dkt. No. 51–5–Yates Dep. at 109:24–110:15, 120:24–122:7). Yates did not know whether he could have obtained the same coverage at a lower cost from another provider. (Dkt. No. 51–5—Yates Dep. at 90:12–15). Noel, on the other hand, affirmatively stated that he chose to obtain insurance through the Defendants because he believed he could not obtain comparable coverage elsewhere for less money. (Dkt. No. 51–4—Noel Dep. at 89:21–90:2). Noel found that cargo insurance offered through Defendants was "pretty inexpensive." (*Id.* at 100:2–7).

The story with respect to cell-phone charges bears out differences between the two named Plaintiffs as well. Noel believed that Defendants offered "the best rate anybody can get" for a phone. (Dkt. No. 51–4—Noel Dep. at 121:17–18). Noel did not care about Defendants' cost for obtaining cell phones service so long as what he was charged was less than what he could get on his own. (*Id.* at 124:1–5). Meanwhile, Yates was unaware if he could have obtained cell phone service for less than he was charged. (Dkt. No. 51–5—Yates Dep. 106:17–22).

The variations between Noel's and Yates' circumstances bear directly on what they must prove to establish their damages claims under the Truth–in–Leasing Act and their claims arising at common law. In addition, Plaintiffs' testimony offers no basis to infer whether members of the absent class read their leases, understood the terms, or ultimately cared about those terms. Because Plaintiffs themselves cannot establish that they were misled or harmed by MDSI's allegedly deficient disclosures, they cannot claim to be typical of other class members they seek to represent. *See Cuming v. S.C.*

*Lottery Comm'n,* 2008 WL 906705, at *5 (D.S.C. Mar. 31, 2008) (the plaintiffs failed to demonstrate typicality because, while they alleged that the defendant's advisements were misleading, some of the plaintiffs would have "difficulty proving that they were mislead [sic] or otherwise harmed").

Accordingly, based on the Record before the Court, Plaintiffs have failed to demonstrate that their claims are typical of those held by members of the absent class for purposes of Rule 23(a)(3), and certification is denied based on this failure. *See Broussard,* 155 F.3d at 340–44 (holding that plaintiffs could not sustain a class action based on a theory of collective breach of contract because variations in the claims undermined typicality). Because, in the course of its rigorous analysis, the Court finds that Plaintiffs cannot establish the typicality requirement of Rule 23(a), the Court need not address the remaining elements under Rule 23(a).

### B.  Rule 23(b)(2)

The Plaintiffs also seek certification under Rule 23(b)(2) which provides for certification of cases seeking injunctive and/or declaratory relief. For a party seeking certification under Rule 23(b)(2) they must show that a defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or declaratory relief is appropriate for the class as a whole. Fed.R.Civ.P. 23(b)(2). Had the Plaintiffs satisfied the requirements of Rule 23(a), the Plaintiffs are not entitled to certification under Rule 23(b)(2) because, taken as a whole, their claims seek "primarily monetary relief." *Thorn,* 445 F.3d 311, 330 (4th Cir.2006); *Zimmerman v. Bell,* 800 F.2d 386, 389–390 (4th Cir.1986) (stating that "We have held that subsection (b)(2) was limited to claims where the relief sought was primarily injunctive or declaratory.").

In this action, while the Plaintiffs request declaratory and injunctive relief, the main tenor of their claim sound in a request for money damages. Also, the Plaintiffs in this action lack standing to seek the declaratory and injunctive relief sought because the named Plaintiffs (both individual and the one corporate entity) are no longer parties to leases with the Defendants since their rela-

tionships with Defendants had previously ended. (*See* Dkt. No. 51–4—Noel Dep. 65:6–66:3; Dkt. No. 51–5—Yates Dep. 44:12–24). Thus, the prospective injunctive relief and declarations they seek regarding practices by the defendant cannot be had in light of the fact that the named Plaintiffs' relationships with the Defendants has ended in addition to the fact that their requested relief sounds for the most part outside of equity. Accordingly, the request for class certification under Rule 23(b)(2) fails.

### Conclusion

Based on the above, Plaintiff's motion for class certification is denied.[2] The start and finish of the analysis with respect to this case is that the named Plaintiffs cannot satisfy the typicality requirement thereby making individual issues predominate. As a result, denial of the class certification motion is required.

**AND IT IS SO ORDERED.**

---

**2.** While no pertinent precedent from the Fourth Circuit exists on the subject matter of the class claims in this matter, there are reported cases from a number of courts that have addressed similar claims and declined to grant class certification. *See Owner–Operator Independent Drivers Ass'n, Inc. v. Landstar System, Inc.*, 622 F.3d 1307 (11th Cir.2010) (affirming district court's decision to decertify class because individual issues predominated as it related to calculating damages in incidental charge-back case and also addressing the merits of the claim in favor of leasors); *OOIDA v. FFE Transp.*, 245 F.R.D. 253, 256 (N.D.Tex.2007) (denying class certification in charge-back case stating each lease had to be examined for calculating liability); *OOIDA v. Swift*, 2006 WL 2521183 (D.Ariz. Mar. 30, 2006) (denying class certification in case involving insurance premiums concluding individual considerations and calculations predominated and squarely rejecting the plaintiffs' theory of the case that actual cost had to be disclosed).